UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| SARAH BOURBEAU<br>1601 Argonne Place NW #219<br>Washington, DC 20009<br><br>EQUAL RIGHTS CENTER<br>11 Dupont Circle, N.W., 4th Floor<br>Washington, DC 20036<br><br>Plaintiffs,<br><br>v.<br><br>THE JONATHAN WOODNER CO.<br>745 5th Ave., 9th Floor<br>New York, NY 10151<br><br>Defendant. | Civil Case No:<br>_____<br><br>Judge:<br>_____ |

## COMPLAINT

1. This is an action for declaratory judgment, permanent injunctive relief, and damages for discrimination on the basis of source of income in housing-related transactions. This action arises under the District of Columbia Human Rights Act, DC Code §§ 2-1401.01, *et seq.*

### Parties

2. Defendant, the Jonathan Woodner Company ("Defendant" or "the Woodner Company"), is a real estate company with its principal place of business located at 745 5th Ave., 9th Floor, New York, NY 10151. From at least April 8, 2005, and at all times relevant to this Complaint, Defendant has owned and managed an apartment

complex located at 3636-3640 16th St. NW, in Washington, DC ("The Woodner"). Defendant is liable for the unlawful discrimination directed toward housing choice voucher holders as described herein, and the Defendant is vicariously liable for the acts and omissions of its agents, employees, and representatives.

3. Plaintiff, Sarah Bourbeau, currently resides at 1601 Argonne Place, N.W., #219, Washington, DC 20009. Ms. Bourbeau receives housing choice vouchers to supplement her income and enable her to pay for housing. Without access to housing subsidized by the voucher program, it is unlikely that Ms. Bourbeau would be able to afford adequate housing.

4. Plaintiff, the Equal Rights Center (hereafter, the "ERC"), is a non-profit corporation organized under the laws of the District of Columbia. Its principal place of business is 11 Dupont Circle, N.W., Fourth Floor, Washington, DC 20036. The ERC was founded by a group of interfaith clergy and community leaders to provide a multi-faceted approach to civil rights issues and to create an open society where equal opportunity for all is assured. The ERC provides a multidisciplinary program of moral persuasion, education and outreach, counseling, advocacy, testing and compliance services, as well as research and planning dedicated to furthering the advancement, *inter alia*, of fair housing and public accommodations throughout the United States. The ERC's various programs provide guidance, information, and assistance to protected individuals who are seeking housing. As a result of Defendant's wrongful conduct complained of herein, the ERC has been damaged by frustration of mission, and by having to divert resources that could have been used to provide counseling, education, and referral services to efforts to

identify and counteract Defendants' discriminatory policies and practices through testing, investigation, and litigation of these policies.

5. From September 9, 2002 until April 25, 2005, the ERC's Articles of Incorporation were revoked based on an inadvertent failure to file an administrative two-year report of domestic corporations with the District of Columbia. The ERC was first advised on April 20, 2005, that its Articles of Incorporation had been revoked. The ERC immediately filed the required reports, paid all fees and penalties due, and the revocation of its Articles of Incorporation was annulled on April 25, 2005, which had the effect of giving the Equal Rights Center such powers, rights, duties, and obligations as it had at the time of the issuance of the revocation with the same force and effect as if the revocation had not been issued.

6. The ERC has operated continuously since its founding as a non-profit corporation or, in the alternative, has operated as a non-profit corporation except during the time of revocation from September 9, 2002 to April 25, 2005, during which time it operated as an organization and/or unincorporated association. To the extent that the ERC was an organization and/or unincorporated association during the time its Articles of Incorporation were revoked and is considered, for the purposes of the claims brought herein, as a separate entity from the non-profit corporate Equal Rights Center, then as of April 25, 2005, when its revocation was annulled, the Equal Rights Center as a non-profit corporation is the successor-in-interest to all rights, title, and interest in any and all claims and causes of action held by the Equal Rights Center as an organization while its Articles of Incorporation were revoked. The Equal Rights Center in all forms will be collectively termed "Equal Rights Center" or "ERC" herein.

7. The ERC, whether considered an organization that has continuously operated as a non-profit corporation since its founding or considered an organization generally operating as a non-profit corporation that operated as an organization and/or unincorporated association while its Articles of Incorporation were revoked, has continuously maintained its mission of, *inter alia*, promoting equal opportunity in housing without regard to discrimination on the basis of a protected class, and has continuously engaged in testing, education, counseling, and referral services in an effort to achieve that mission.

## Jurisdiction and Venue

8. This Court has jurisdiction over this action by virtue of diversity of citizenship under 28 U.S.C. Section 1332. Plaintiff Sarah Bourbeau is a citizen of the District of Columbia. Plaintiff ERC is a non-profit corporation organized under the laws of the District of Columbia, with its principal place of business in the District of Columbia. Defendant is a New York company with its principal place of business in New York, New York, and owns and manages an apartment complex in the District of Columbia. The amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interests and costs.

9. Venue is proper in this judicial district under 28 U.S.C. 1391(a)(2), as Defendant's acts giving rise to this Complaint occurred in the District of Columbia; and Defendant's acts have caused injury to Plaintiffs in the District of Columbia.

## Nature of the Claim

10. Defendant unlawfully refuses to rent available apartment units to individuals relying on housing choice vouchers as their source of payment for a portion

4

of the monthly rent. Housing choice vouchers are part of the Housing Choice Voucher Program (the "Voucher Program") that provides a tenant-based subsidy that is not linked to any particular building complex, building, or unit, but permits an individual with a voucher to rent housing in the private market provided rents do not exceed the Program's rent limitations. One of the primary goals of the Voucher Program is to provide low-income families and individuals with the opportunity to obtain rental housing outside areas of poverty concentration. By refusing to accept new voucher-holder tenants, Defendant's discrimination perpetuates and contributes to the societal ills sought to be remedied by the Voucher Program. Defendant's acts, policy, and practice of refusing to accept new voucher-holder tenants constitute source of income discrimination in violation of the District of Columbia common law and the District of Columbia Human Rights Act, DC Code §§ 2-1401.01, *et seq.* ("DCHRA"), which forbids discrimination based on source of income.

**Factual Background**

11.    The Housing Choice Voucher Program, a successor to the Section 8 Rental Voucher or Rental Certificate program, is a federally funded housing subsidy program for low-income families to obtain decent, affordable housing. The Voucher Program is the largest assisted-housing program administered by the Department of Housing and Urban Development ("HUD").

12.    Under the Voucher Program, local public housing authorities receive monies from HUD to subsidize rent for qualifying families and individuals. The local public housing authorities then use these monies to issue vouchers to eligible families and individuals who seek rental housing in the private market. Each public housing authority

has a limited number of vouchers it can distribute and maintains a waiting list of families and individuals seeking vouchers when they become available. In the District of Columbia, the designated housing authority administering the Voucher Program is the District of Columbia Housing Authority ("DCHA").

13. Each individual with a voucher contributes at least thirty (30) percent of his or her adjusted monthly income to rent. The remaining rent is paid by the public housing authority directly to the property owner.

14. The ERC's initiatives are built upon the accomplishments of the Fair Housing Council of Greater Washington, founded in 1983, and the Fair Employment Council of Greater Washington, founded in 1990. The ERC, upon its founding, became one of the first comprehensive civil rights centers in the nation dedicated to affirmatively furthering fair housing, fair employment, public accommodations, and other civil rights issues.

15. The ERC provides a multi-disciplinary program of private enforcement, voluntary compliance, education and outreach, diversity training, research, and planning initiatives for the public and private sector throughout the District of Columbia. The ERC's various programs provide guidance, information, and assistance to protect individuals throughout the Washington, DC area who are seeking housing. The ERC also conducts and participates in programs to educate the real estate industry about its obligations under the federal, state, and local fair housing laws.

16. The ERC's public information projects have increased awareness of fair housing issues and generated numerous telephone calls from individuals who have a variety of needs regarding fair housing opportunities. Many of these individuals

complain of housing discrimination. The ERC investigates these complaints by, for example, conducting fair housing tests of housing providers and other entities alleged to discriminate on the basis of source of income.

17. Through such testing, the ERC found that The Woodner building has an express policy and practice of refusing to rent to housing choice voucher holders. In four separate instances, agents of the ERC contacted the Woodner and were told that the property owners did not accept housing choice vouchers.

18. On January 29, 2002, an ERC representative posing as a prospective tenant contacted The Woodner and spoke with a representative of The Woodner. The ERC tester stated that she wished to use a housing choice voucher to rent a studio apartment. The Woodner's representative advised the tester that while studio apartments were available for $770 per month, the complex had reached its limit on accepting voucher holders as tenants and The Woodner had not processed voucher applications for some time.

19. On the same day, another ERC representative contacted The Woodner posing as a prospective tenant who would not be using voucher payments. This representative was told that a studio apartment was available for $770 per month and that the first month's rent would be free if she would take possession of the apartment by the end of the month.

20. On March 21, 2005, another ERC tester contacted The Woodner and was told by The Woodner's representative that efficiencies were available for $785 per month including utilities. When the ERC's representative advised The Woodner's representative

that he planned to use a housing choice voucher, he was told that The Woodner had reached its limit on vouchers and was not accepting them anymore.

21.  On April 5, 2005, another ERC representative contacted The Woodner. The Woodner's representative advised this tester that studio apartments were available with monthly rents ranging from $695 to $895. When the tester indicated that she would be using a housing choice voucher to pay rent, The Woodner's representative told the tester that The Woodner had reached its limit on vouchers for all types of apartments and was not accepting any vouchers whatsoever.

22.  On April 8, 2005, Sarah Bourbeau contacted The Woodner in an effort to secure housing. Despite having apartments available for rent at prices that fell within the voucher payment standards, an agent of The Woodner advised her that The Woodner would not accept her vouchers as payment.

23.  In 2005, the monthly payment standard in Washington, DC for an efficiency was $1043, a one-bedroom apartment was $1188, and a two-bedroom apartment was $1348. The rental rates ($695 to $895), offered by Defendant for an efficiency apartment during that period, fell within the voucher payment standards established by the DCHA.

24.  By its acts, policy, and practice, Defendant refuses to rent to individuals who intend to use housing choice vouchers at The Woodner. In so doing, Defendant unlawfully discriminates against renters in the District of Columbia based on source of income.

25.  Defendant's source of income discrimination has injured, and will continue to injure, the ERC—whether considered an organization that has continuously

operated as a non-profit corporation since its founding in 1999 or an organization generally operating as a non-profit corporation that operated as an organization and/or unincorporated association while its articles of incorporation were revoked—by interfering with its mission, efforts, and programs that are intended to bring about equality of opportunity in housing. In order to counteract Defendant's discriminatory conduct, the ERC has committed scarce resources, including substantial staff time, to counsel complainants, investigate complaints, engage in an education and outreach campaign, and develop and disseminate educational materials. Defendant's acts, policy, and practice will require the ERC to continue to do so in the future.

26.    The ERC's efforts to counteract Defendant's discriminatory conduct have diverted and continue to divert resources from other planned anti-discrimination programs, involving education, outreach, and testing.

27.    By engaging in discriminatory practices and interfering with the ERC's efforts and programs, Defendant has frustrated and continues to frustrate the ERC's mission and purpose of promoting the equal availability of housing to all persons without regard to source of income.

28.    Defendant's actions have also injured Sarah Bourbeau by discriminating against her and denying her access to rental housing, based solely upon her source of income. Ms. Bourbeau was a qualified applicant for housing when she contacted The Woodner to determine the availability of apartments that fell within voucher program rent limitations. She was denied housing based on the fact that she expressed an intent to use housing choice vouchers to pay her rent. As a consequence of the denial, Ms. Bourbeau was forced to continue her search for apartment units priced within program limits. The

availability of such apartments in the Washington DC area is extremely limited. Not only was she subjected to the humiliation of the initial denial, but she also suffered from tremendous anxiety due to the uncertainty of her housing situation and the substantial drain on her already severely limited financial resources.

29. Defendant's unlawful acts as described above were, and are, intentional and willful; and have been, and are, implemented with callous and reckless disregard for the statutorily protected rights of renters who intend to use housing choice vouchers at The Woodner.

30. Unless enjoined, Defendant will continue to engage in the unlawful acts and practices described above.

31. Defendant's actions, policy, and practice described above constitute an ongoing, continuing pattern or practice of discrimination.

**Count I**

**Source of Income Discrimination in Violation of the DC Human Rights Act**

32. The ERC and Ms. Bourbeau (collectively referred to as "the Plaintiffs") reallege and incorporate herein by reference all of the allegations set forth in paragraphs 1 through 31 above.

33. Ms. Bourbeau and the ERC, whether considered an organization that has continuously operated as a non-profit corporation since its founding or considered an organization generally operating as a non-profit corporation that operated as an organization and/or unincorporated association while its Articles of Incorporation were

revoked, are aggrieved persons within the meaning of that phrase as used in the DC Human Rights Act, DC Code §§ 2-1401.02(21) & 2-1403.16 ("DCHRA").

34. The DCHRA makes it unlawful to "refuse, fail to initiate, or fail to conduct any transaction in real property" based on source of income, and/or to discriminate by including "terms, conditions or restrictions" in real estate transactions based on source of income. Further, the DCHRA makes it illegal to publish any statement with respect to a proposed transaction in real property that indicates any "preference, limitation, or discrimination based on…source of income." DC Code § 2-1402.21.

35. Source of income includes gains from federal payments, such as housing choice vouchers. DC Code § 2-1402.02; *see also* DC Code § 2-1402.21(e).

36. Defendant's statements, policy, and practice of refusing to rent to individuals based on their status as housing choice voucher holders constitutes discrimination based on the actual or perceived source of income of the potential renters. Defendant's actions constitute an illegal refusal, failure to initiate, and failure to conduct a transaction in real property based on source of income in violation of DC Code § 2-1402.21.

37. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered money damages in an amount to be determined at trial.

## Count II

### Negligent Supervision

38. The ERC realleges and incorporates herein by reference all of the allegations set forth in paragraphs 1 through 37 above.

39. Defendant knew or should have known that its employees and/or agents were behaving in an illegal manner by refusing to consider any voucher-holder applicants, and making statements that discriminate against voucher-holder applicants in violation of existing law.

40. Defendant failed to adequately supervise its employees and agents to prevent them from engaging in illegal discrimination.

41. As a direct and proximate result of defendant's conduct, Plaintiffs have suffered money damages in an amount to be determined at trial.

**Prayer for Relief**

WHEREFORE, Plaintiffs, the ERC and Sarah Bourbeau, respectfully request that the Court:

a) Enter judgment declaring that Defendant's acts, policy, and practice of refusing to accept housing choice voucher holders is source of income discrimination in violation of the DCHRA, DC Code Ann. § 2-1402.21;

b) Enter judgment for appropriate permanent injunctive relief, including an order that Defendant accept tenants without regard to source of income and such remedial actions as are necessary to ameliorate Defendant's past illegal discriminatory conduct;

c) Award Plaintiffs monetary damages in an amount to be determined at trial;

d) Award Plaintiffs reasonable attorneys' fees and costs;

e) Award Plaintiffs punitive damages in an amount to be determined at trial; and

f) Grant such other relief as the Court may deem just and proper.

**Demand For Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b) Plaintiffs demand a trial by jury of all issues so triable as of right.

Respectfully Submitted,

/s/ Isabelle M. Thabault

Isabelle M. Thabault (D.C. Bar No. 318931)
Robert M. Bruskin (D.C. Bar No. 164293)
Washington Lawyers' Committee
For Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Tel: 202-319-1000 / Fax: 202-319-1010

Thomas A. Reed (D.C. Bar No. 435258)
Jonathan Smith (D.C. Bar No. 500145)
Jenée Desmond-Harris
Kirkpatrick & Lockhart Preston Gates Ellis LLP
1735 New York Ave., N.W., Suite 500
Washington, DC 200006
Tel: 202-661-1700 / Fax: 202-331-1024

DATED:    January 17, 2007

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Sarah Bourbeau; Equal Rights Center

1104

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  District of Columbia
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert M. Bruskin, Esq.    (202) 319-1000
Washington Lawyers' Committee for Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, DC 20036

## DEFENDANTS

The Jonathan Woodner Co.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

CASE NUMBER 1:07CV00164
JUDGE: Paul L. Friedman
DECK TYPE: Civil Rights (non-employm
DATE STAMP: 01/23/2007

**JURY ACTION**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP FOR PLAINTIFF

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ● 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ● 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.
*(If Antitrust, then A governs)*

### ✓ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

①

| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☒ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☒ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 USC 1332
DC Human Rights Act, DC Code Sections 2-1401.01 based on discrimination on the basis of source of income in housing related transactions

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ To be determined by Court   Check YES only if demanded in complaint   JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE January 23, 2007   SIGNATURE OF ATTORNEY OF RECORD [signature]

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.