UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SARAH BOURBEAU, et al. | : | |
| Plaintiffs, | : | |
| v. | : | Case No. 1:07CV00164 |
| | : | Judge: Paul L. Friedman |
| THE JONATHAN WOODNER CO., | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S MOTION TO DISMISS COMPLAINT
## FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED

Defendant The Jonathan Woodner Co. hereby moves pursuant to Fed.R.Civ.P. 12(b)(6) that the instant action be dismissed and in support hereof refers the Court to the attached memorandum of points and authorities.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: February 16, 2007

Richard W. Luchs, #243931
Roger D. Luchs, #347609
William C. Casano, #352492
1620 L Street, N.W.
Suite 900
Washington, D.C. 20036
Telephone: (202) 452-1400

Counsel for Defendant

LAW OFFICES
GREENSTEIN DELORME & LUCHS, P.C.
1620 L STREET, N. W.
SUITE 900
WASHINGTON, D.C. 20036-5605
AREA CODE 202-452-1400

307606V1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARAH BOURBEAU, et al.          :

     Plaintiffs,             :

       v.                :     Case No. 1:07CV00164
                          :     Judge: Paul L. Friedman
THE JONATHAN WOODNER CO.,    :

     Defendant.          :

                          :

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

Introduction

    The instant lawsuit charges defendant The Jonathan Woodner Co. ("Woodner"),

managing agent of the apartment building at 3636 16th Street, N.W., Washington, D.C.,

("the Woodner") with violation of the District of Columbia Human Rights Act, D.C.

Code § 2-1401.01 (2001 ed.) *et seq.* More specifically, it charges Woodner with

discrimination based on "source of income" because of its alleged refusal to accept

Section 8 housing choice vouchers from applicants for apartments at the Woodner.[1]

    Plaintiff Equal Rights Center ("ERC") alleges that in January, 2002, and then

again on March 21, 2005 and April 5, 2005, it conducted tests at the Woodner to see if it

would accept Section 8 voucher holders as tenants. It alleges its testers were told that the

Woodner had "reached its limit." Complaint, Par. 18, 20, 21. Plaintiff Sarah Bourbeau

---

[1] In the housing choice voucher program, Federal funds administered through local housing agencies or authorities are paid to landlords who are presented vouchers by tenants who qualify for the same under regulations issued by the Federal government. An extended description of the program can be found in Salute v. Stratford Green Apartments, 136 F.3d 298 (2d Cir. 1998) and on the website of the D.C. Housing Authority, at www.dchousing.org.

LAW OFFICES
GREENSTEIN DELORME & LUCHS, P.C.
1620 L STREET, N. W.
SUITE 900
WASHINGTON, D.C. 20036-5605
AREA CODE 202-452-1400

claims that on April 8, 2005, she inquired at the Woodner regarding renting an apartment and was advised that her voucher would not be accepted. Complaint, Par. 22.

For the record, the Defendant denies these charges, because it has always accepted Section 8 voucher holders as tenants. Nevertheless, for the reasons set forth below, neither ERC nor Bourbeau has stated a legally-cognizable claim against Woodner, and thus, under Fed.R.Civ.P. 12(b)(6), this case must be dismissed.

First, ERC acknowledges in the complaint that it forfeited its articles of incorporation in 2002 for failure to make required filings with the District of Columbia. Under District of Columbia law, it was thus deprived of its right to continue doing business and therefore may not make any claim for any alleged injury occurring after its official charter was forfeited, and in various cases filed by ERC in the Superior Court of the District of Columbia, judges have so ruled. Secondly, landlord participation in the Section 8 housing choice voucher program is voluntary under Federal law and both the D.C. Human Rights Act itself, and the D.C. Home Rule Act, prohibit the City Counsel from adopting any law that would supersede Federal law in these circumstances. Finally, the D.C. Human Rights Act did not contain a provision that prohibits discrimination against Section 8 voucher holders seeking to lease apartments until April 13, 2005, i.e., after ERC did its testing and Bourbeau made her inquiry to the Woodner.[2] Therefore, even if participation in the Section 8 program is deemed to be mandatory in the District of Columbia, there was no prohibition against refusing to accept Section 8 voucher applicants as tenants until April 13, 2005.

---

[2] This provision, for reasons discussed below, bars landlords from treating Section 8 voucher holders who are accepted as tenants differently from other tenants. It does not require landlords to accept voucher holders as tenants.

I.      <u>ERC lacks standing to pursue a claim because it conducted testing after the District of Columbia had revoked its articles of incorporation.</u>

Pursuant to D.C. Code §§ 29-301.85 and 29-301.86(a) (2001 ed.), when the articles of incorporation ("the articles") of a nonprofit corporation are revoked for failure to file required reports or pay required fees, it is required to cease doing all business other than that necessary to wind up its affairs.[3] As ERC acknowledges in its complaint, its articles were revoked on September 9, 2002, and it did not reinstate itself, by making required filings and paying required fees and penalties, until April 25, 2005. It is black letter law that when the articles of a corporation are forfeited, it no longer exists and has only such authority as is prescribed by statute. <u>Helvering v. South Penn Oil Co.</u>, 62 App. D.C. 373, 68 F.2d 420, 423 (1933), <u>Catalyste Chemical Services, Inc. v. Global Ground Support</u>, 350 F.Supp. 2d 1, 22 (D.D.C. 2004).

ERC represented in an opposition to a motion to dismiss filed in the Superior Court of the District of Columbia in <u>Equal Rights Center v. E&G Property Services, Inc.</u>, CA-05-2761 a suit it filed on April 11, 2005, that it only became aware that its articles had been revoked when the plaintiff in that suit, also represented by undersigned counsel, filed that motion. That is, in fact, one of several suits ERC filed in Superior Court in which it alleged discrimination against Section 8 voucher holders. In each case, the trial judge assigned to the case ruled that ERC had no standing to pursue any claim based on testing it performed, or injury it purported to suffer before it was reinstated. See Exhibits A through D attached hereto. In interpreting the impact of corporate revocation provisions in the D.C. Code, as declared in earlier decisions rendered by the D.C. Court

---

[3] A virtually identical provision appears in the D.C. business corporations law, at D.C. Code § 29-101.123 (2001 ed.).

of Appeals, these judges uniformly rejected ERC's argument that its reinstatement of its charter had retroactive effect and validated actions it took when it had no charter.

Several of those cases were settled after these rulings were issued. However, the case of Equal Rights Center v. Unnamed Trustee, CA-05-2766, (Exhibit D) reached the point of a final judgment by virtue of its dismissal by the trial court. ERC, then, is collaterally estopped from arguing to this court that it may proceed here based on its testing and alleged injury, because these occurred prior to its reinstatement on April 25, 2005. Edens v. Laubach, 838 F.Supp. 510 (D. Ks. 1993), citing Cutler v. Hayes, 260 U.S. App. D.C. 230, 818 F.2d 879 (1987), Smith v. Jenkins, 562 A.2d 610 (D.C. 1989). Its claim must be dismissed on this ground alone.

II.    The D.C. Human Rights Act does not and cannot lawfully be interpreted to require landlords to participate in the Section 8 Housing Choice Voucher program.

ERC and Bourbeau premise their case on a faulty reading of D.C. Code § 2-1402.21(e), which was added to a listing of prohibited conduct with respect to housing and commercial space on April 13, 2005. That subsection reads as follows:

> The monetary assistance provided to an owner of a housing accommodation under Section 8 of the United States Housing Act of 1937 . . . either directly or through a tenant shall be considered a source of income under this section.

They read that provision as requiring landlords to participate in the Section 8 housing choice voucher program. In fact, it does not, and cannot lawfully be, read in that manner.

As noted in the introduction, the Federal law creating the Section 8 housing choice voucher program has established it as a voluntary program. Knapp v. Eagle Property Management Corp., 54 F.3d 1272 (7th Cir. 1998). In fact, it was amended in 1996 to delete a provision requiring landlords who accepted one Section 8 voucher holder

307474V1                                    4

to take all who otherwise qualified. <u>Salute v. Stratford Green Apartments</u>, 136 F.3d 293

(2d Cir. 1998). Under Federal law, landlords may accept as many or as few Section 8

voucher holders as they so choose. Under the District of Columbia Home Rule Act, the

City Council is without the authority to make the program mandatory locally, because

that would have the effect of altering a Federal statute which is in effect in other

jurisdictions as well as the District. D.C. Code § 1-206.02(a)(3) (2001 ed.). <u>Brizill v.

D.C. Board of Election and Ethics</u>, 911 A.2d 1212 (D.C. 2006). And the D.C. Human

Rights Act itself expressly provides that:

> "Nothing in this chapter shall be construed to supersede
> any federal rule, regulation or act."

D.C. Code § 2-1401.03(c)(2001 ed.). Plaintiffs' construction of the Act, if accepted,

would override Federal law, more specifically the voluntary nature of the Section 8

voucher program, and violate express prohibitions in both the Home Rule Act and the

Human Rights Act. Further, under general rules of statutory construction and

preemption, and Plaintiffs' reading of the D.C. Code § 2-1402.21(e) constitutes an

untenable reading of that provision, deals expressly with a Federal program that provides

direct payments to landlords.[4] See, e.g. <u>Scarborough v. Winn Residential, LLP</u>, 890 A.2d

249 (D.C. 2006). <u>Calloway v. D.C. Housing Authority</u>, 2006 D.C. App. LEXIS 745

(D.C. December 8, 2006).

    Thus, landlords may refuse to accept Section 8 housing choice voucher holders as

tenants, if they so choose. The antidiscrimination language in the Human Rights Act may

only be read to mean that Section 8 voucher holders who are accepted as tenants may not

be treated differently than those who don't have vouchers. It may not be read to create a

---

[4] One major reason the program is voluntary is because, to participate, landlords must comply with a host of regulatory and paperwork requirements.

preference or "special dispensation," which effectively is what both ERC and Bourbeau

are arguing for. See, e.g. Peyton v. Reynolds, 955 F.2d 247 (4th Cir. 1992); Duncan v.

Children's National Medical Center, 702 A.2d 207 (D.C. 1997).

III.    The District of Columbia Human Rights Act did not prohibit discrimination
        against Section 8 voucher holders seeking to rent apartments until April 13, 2005.

In 2002, the District enacted into law the "Low-Income Housing Preservation and

Protection Act," which, *inter alia*, included provisions requiring landlords choosing to

opt on the Section 8 "project based" voucher program to accept housing choice vouchers

from those tenants who choose to remain at the subject property after the landlord opts

out. See, D.C. Code § 42-2851.01 et seq. (2006 Pocket Part).[5] That law included a

provision that characterizes Section 8 assistance, whether paid directly to the landlord or

through a tenant, as a "source of income" under the D.C. Human Rights Act. As enacted

in 2002, this provision referenced D.C. Code § 2-1402.31 of the D.C. Human Rights Act,

which prohibits discrimination in "places of public accommodations," a term defined at

D.C. Code § 2-1402.24. The term does not, and never has, encompassed private dwelling

units, but only areas of buildings or facilities accessible to members of the public.

The D.C. City Council, several years later, adopted a set of technical amendments

to various laws and a Technical Amendment Act incorporating these amendments

became effective on April 13, 2005. That law, *inter alia*, changed the reference from § 2-

1402.<u>31</u> to § 2-1402.<u>21</u>. See D.C. Law 15-354 § 8(a), D.C. Code § 2-1402.21(e)(2006

---

[5] The project-based program is discussed and contrasted with the voucher program, in <u>Salute</u>, *supra*. In the project-based program, an entire building is subsidized with Section 8 funds and applicants for tenancy apply there for apartments there rather than using vouchers, which may be used at any property that will accept them and meets certain statutory requirements. Under Federal law, landlords opting out of the project based Section 8 program are required to accept "enhanced" vouchers from tenants who wish to continue residing in the project. Jeanty v. Shore Terrace Realty Assn., 2004 U.S. Dist. LEXIS 15773, 42 U.S.C. § 1437(f)(t), § 1437(f)(6)(8)(A).

Supplemental Pamphlet). Only then did the law ban discrimination against voucher holders leasing apartments. Under applicable principles of law, that amendment had prospective effect only. Newsweek Magazine v. D.C. Commission on Human Rights, 376 A.2d 777, 783 (D.C. 1977), Mayo v. D.C. Department of Employment Services, 738 A.2d 807 (D.C. 1999).

Thus, when, the Woodner purportedly violated the D.C. Human Rights Act with regard to ERC's testers and with respect to Bourbeau, no law was in effect that could even arguably have outlawed Woodner's alleged refusal to accept Section 8 voucher holders as tenants. As a matter of law, then, there could be no unlawful discrimination based on source income.

### Conclusion

Apart from Plaintiffs' failure to state a claim, these arguments also call into question the averment in Paragraph 8 of the complaint that they have suffered at least $75,000 in damages. As shown above, ERC did not exist when it tested and, for that reason alone, was incapable of suffering injury or damage. Because the D.C. Human Rights Act, prior to April 13, 2005, could not even arguably be construed to prohibit discrimination against Section 8 voucher holders applying for tenancy, Bourbeau cannot claim any injury. Given Plaintiffs' failure to state a valid claim, there cannot be diversity here, because the jurisdictional requirement cannot be met. Hall v. Earthlink Network, Inc., 396 F.3d 500, 507 n. 5, (2d Cir. 2005) ("In a diversity case, if a court makes a face-of-the-complaint determination that the $75,000 amount in controversy cannot be recovered 'to a legal certainty,' the case is dismissed for lack of subject matter jurisdiction.").

Accordingly, the complaint must be dismissed, as Plaintiffs have failed to state a claim for which relief may be granted.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: February 16, 2007

Richard W. Luchs, #243931
Roger D. Luchs, #347609
William C. Casano, #352492
1620 L Street, N.W.
Suite 900
Washington, D.C. 20036
Telephone: (202) 452-1400

Counsel for Defendant

307474V1

8

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 16, 2007 the following persons were

served by CM-ECF:

> Honorable Paul L. Friedman
> Robert M. Bruskin, Esq.
> Thomas A. Reed, Esq.

Roger D. Luchs

# EXHIBIT A

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

EQUAL RIGHTS CENTER,
      Plaintiff

                       :

                       :

      v.              :     Civil Action No. 05-7190
                       :     Calendar 14

                       :

PHIFER REALTY INC., *et al.*
      Defendants.       :

## ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the court on Defendants' Motion to Dismiss, which the court is considering as a motion for summary judgment, pursuant to Super. Ct. Civ. R. 12(b). Although discovery has not been exchanged, there is no dispute between the parties regarding the facts material to Defendants' motion.

Plaintiff is a not-for-profit corporation whose mission is to eradicate various forms of discrimination. It alleges in this action that Defendants' discriminated against recipients of so-called section 8 vouchers for subsidized housing by refusing to rent to them. Its primary evidence of the alleged discrimination comes from the experience of "testers" Plaintiff employed in 2004 to pose as section 8 tenants seeking to use their vouchers to rent housing from Defendants.

There is no dispute that on September 9, 2002, Plaintiff's corporate charter was revoked because of its failure to file certain reports required by law. Plaintiff remained in that status until April 25, 2005, when it filed the delinquent reports and its charter was reinstated. The law is that after the charter was revoked, Plaintiff "ceased to exist" as a corporation except for the limited purpose of taking steps necessary to wind up its affairs. D.C. Code § 29-301.86(c) and (d).

Order docketed and copies mailed
from Chambers, First Class Mail, to
parties indicated above on 12/22/05.



There is no question that using "testers" to build a case against these Defendants in 2003 and 2004 was prohibited conduct of new corporate business unrelated to winding up. See Accurate Construction Co. v. Washington, 378 A.2d 681, 684 (D.C. 1977); see also Community Credit Union Services, Inc., et al. v. American Federation of Community Credit Unions, et al., 534 A.2d 331, 335 (D.C. 1987). Moreover, as a matter of law, Plaintiff could not have suffered any damages during the period of revocation in terms of diversion of resources from its central mission, as it has alleged, because, during this period, it was not authorized to continue to pursue its mission, central or diverted.

The only remaining question is whether the reinstatement of Plaintiff's charter in April of 2005 is to be construed retroactively so as to validate actions taken, and damages allegedly suffered, during the period of revocation. It is true, as Plaintiff argues, that the certificate of reinstatement "had the effect of annulling the revocation proceedings," reestablishing the power of the corporation to act "as if the proclamation had not been issued." D.C. Code § 29-310.90. Although this statutory language seems plain enough on its face, the argument Plaintiff attempts to derive from it has been expressly rejected by the District of Columbia Court of Appeals in Accurate Construction, supra, and several subsequent decisions. Collectively, these decisions stand for the proposition that the corporation may not take advantage of its revoked status, either to enjoy a benefit derived from acts taken during the period of revocation or to avoid liability for corporate debts incurred during that period. Indeed, the only decisions recognizing retroactive reinstatement of a corporate charter do so to prevent corporations from manipulating the revocation and reinstatement to escape liability to third parties who justifiably relied on the existence of the corporation. See, e.g., Truitt v. Miller, 407 A.2d 1073, 1080-81 (D.C. 1979).

Accordingly, this court holds that Plaintiff may not recover damages relating to diversion of resources allegedly incurred during the period its charter was revoked.

When Plaintiff filed its complaint in September of 2005, its charter was reinstated and it was fully authorized to initiate a lawsuit. Although the court has ruled that it may not claim damages allegedly incurred during its statutory "non-existence," it may be able to prove its claims and damages based on events occurring after reinstatement on April 25, 2005.[1] To that extent Defendants' motion to dismiss, treated as a motion for summary judgment, must be denied and Plaintiff is entitled to proceed and to take discovery consistent with this ruling.[2]

For the foregoing reasons, it is this _21st_ day of December, 2005,

ORDERED that Plaintiff's motion for leave to file memorandum in response to issues arising at the December 16, 2005, Initial Scheduling Conference be, and it hereby is, granted; and it is further

ORDERED that Defendants' motion to dismiss, treated as a motion for summary judgment pursuant to Super. Ct. Civ. R. 12(b) be, and it hereby is, granted in part and denied in part, and Plaintiff may not recover damages based on harm to the corporation allegedly incurred during the period its corporate charter was revoked; and it is further

---

[1] The court rejects Plaintiff's argument that its suit can look backward because the Human Rights Act, pursuant to which it asserts these claims, allows individuals and unincorporated associations to bring actions to vindicate rights secured by the Act. Plaintiff brings this action <u>as a corporation</u> and alleges that Defendants' actions have harmed it <u>as a corporation</u>.

[2] It is at least arguable that the line of cases headed by <u>Accurate Construction</u> would prohibit Plaintiff from using to its advantage evidence derived from ultra vires activities undertaken in 2003 and 2004, when its charter was revoked. Having ruled that Plaintiff is entitled to proceed as to the post April 25, 2005 period, the court declines to decide on this motion the extent to which evidence gathered during the revocation period may be admissible to prove any claims that survive summary judgment.

ORDERED that this matter is hereby scheduled for a further Initial Scheduling

Conference on January 27, 2006, at 9:30 in Courtroom 220.

JUDGE FREDERICK H. WEISBERG

Copies to:

Isabelle M. Thabault
Washington Lawyers' Committee
For Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036

Gail Westover
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Richard W. Luchs
Greenstein Delorme & Luchs, P.C.
1620 L Street, N.W., Ste. 900
Washington, D.C. 20036-5605

4

# EXHIBIT B

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

EQUAL RIGHTS CENTER,                              :
                    Plaintiff                     :
                                                  :
                                    .             :
                                                  :
        v.                                        :    Civil Action No. 05-7191
                                                  :    Calendar 14
                                                  :
HORNING BROTHERS, *et al*.                        :
                    Defendants.                   :

## ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the court on Defendants' Motion to Dismiss, which the court is

considering as a motion for summary judgment, pursuant to Super. Ct. Civ. R. 12(b). Although

discovery has not been exchanged, there is no dispute between the parties regarding the facts

material to Defendants' motion.

Plaintiff is a not-for-profit corporation whose mission is to eradicate various forms of

discrimination. It alleges in this action that Defendants' discriminated against recipients of so-

called section 8 vouchers for subsidized housing by refusing to rent to them. Its primary

evidence of the alleged discrimination comes from the experience of "testers" Plaintiff employed

in 2004 to pose as section 8 tenants seeking to use their vouchers to rent housing from

Defendants.

There is no dispute that on September 9, 2002, Plaintiff's corporate charter was revoked

because of its failure to file certain reports required by law. Plaintiff remained in that status until

April 25, 2005, when it filed the delinquent reports and its charter was reinstated. The law is that

after the charter was revoked, Plaintiff "ceased to exist" as a corporation except for the limited

12/21/05
Order docketed and copies mailed
from Chambers, First Class Mail, to
parties indicated above on 12/22/05.

Case: 2005 CA 007191 B

ß

purpose of taking steps necessary to wind up its affairs.  D.C. Code § 29-301.86(c) and (d).

There is no question that using "testers" to build a case against these Defendants in 2003 and

2004 was prohibited conduct of new corporate business unrelated to winding up.  See Accurate

Construction Co. v. Washington, 378 A.2d 681, 684 (D.C. 1977); see also Community Credit

Union Services, Inc., et al. v. American Federation of Community Credit Unions, et al., 534 A.2d

331, 335 (D.C. 1987).  Moreover, as a matter of law, Plaintiff could not have suffered any

damages during the period of revocation in terms of diversion of resources from its central

mission, as it has alleged, because, during this period, it was not authorized to continue to pursue

its mission, central or diverted.

The only remaining question is whether the reinstatement of Plaintiff's charter in April of

2005 is to be construed retroactively so as to validate actions taken, and damages allegedly

suffered, during the period of revocation.  It is true, as Plaintiff argues, that the certificate of

reinstatement "had the effect of annulling the revocation proceedings," reestablishing the power

of the corporation to act "as if the proclamation had not been issued." D.C. Code § 29-310.90.

Although this statutory language seems plain enough on its face, the argument Plaintiff attempts

to derive from it has been expressly rejected by the District of Columbia Court of Appeals in

Accurate Construction, supra, and several subsequent decisions.  Collectively, these decisions

stand for the proposition that the corporation may not take advantage of its revoked status, either

to enjoy a benefit derived from acts taken during the period of revocation or to avoid liability for

corporate debts incurred during that period.  Indeed, the only decisions recognizing retroactive

reinstatement of a corporate charter do so to prevent corporations from manipulating the

revocation and reinstatement to escape liability to third parties who justifiably relied on the

existence of the corporation.  See, e.g., Truitt v. Miller, 407 A.2d 1073, 1080-81 (D.C. 1979).

Accordingly, this court holds that Plaintiff may not recover damages relating to diversion of resources allegedly incurred during the period its charter was revoked.

When Plaintiff filed its complaint in September of 2005, its charter was reinstated and it was fully authorized to initiate a lawsuit. Although the court has ruled that it may not claim damages allegedly incurred during its statutory "non-existence," it may be able to prove its claims and damages based on events occurring after reinstatement on April 25, 2005.[1]  To that extent Defendants' motion to dismiss, treated as a motion for summary judgment, must be denied and Plaintiff is entitled to proceed and to take discovery consistent with this ruling.[2]

For the foregoing reasons, it is this $\mathcal{U}^{st}$ day of December, 2005,

ORDERED that Plaintiff's motion for leave to file memorandum in response to issues arising at the December 16, 2005, Initial Scheduling Conference be, and it hereby is, granted; and it is further

ORDERED that Defendants' motion to dismiss, treated as a motion for summary judgment pursuant to Super. Ct. Civ. R. 12(b) be, and it hereby is, granted in part and denied in part, and Plaintiff may not recover damages based on harm to the corporation allegedly incurred during the period its corporate charter was revoked;[3]  and it is further

---

[1] The court rejects Plaintiff's argument that its suit can look backward because the Human Rights Act, pursuant to which it asserts these claims, allows individuals and unincorporated associations to bring actions to vindicate rights secured by the Act. Plaintiff brings this action as a corporation and alleges that Defendants' actions have harmed it as a corporation.

[2] It is at least arguable that the line of cases headed by Accurate Construction would prohibit Plaintiff from using to its advantage evidence derived from ultra vires activities undertaken in 2003 and 2004, when its charter was revoked. Having ruled that Plaintiff is entitled to proceed as to the post April 25, 2005 period, the court declines to decide on this motion the extent to which evidence gathered during the revocation period may be admissible to prove any claims that survive summary judgment.

[3] Plaintiff concedes that its complaint must be dismissed against Lawrence E. Horning, who is deceased.  As to Defendants Joseph Horning, Jr., and Heights Commercial, LLP, the motion to dismiss will be denied at this time pending further discovery of the ownership and operation of the properties in question.

3

ORDERED that this matter is hereby scheduled for a further Initial Scheduling

Conference on January 27, 2006, at 9:30 in Courtroom 220.

JUDGE FREDERICK H. WEISBERG

Copies to:

Isabelle M. Thabault
Washington Lawyers' Committee
For Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036

John P. Relman
Relman & Associates
1225 Nineteenth Street, #600
Washington, D.C. 20036

Richard W. Luchs
Greenstein Delorme & Luchs, P.C.
1620 L Street, N.W., Ste. 900
Washington, D.C. 20036-5605

4

# EXHIBIT C

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| **EQUAL RIGHTS CENTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-2761** |
| | ) | **Calendar 1 – Judge Fisher** |
| **E & G GROUP, et. al.,** | ) | **Status: May 3, 2006** |
| | ) | |
| **Defendants.** | ) | |

### ORDER GRANTING IN PART AND DENYING PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND <u>GRANTING THIRD-PARTY DEFENDANT'S MOTION TO DISMISS</u>

Before this Court for consideration are Defendants' Motion for Summary Judgment, Plaintiff's Motion for Partial Summary Judgment, Third-Party Defendant's Motion to Dismiss, and the responsive pleadings thereto.

For the reasons stated herein and in open court on May 3, 2006, it is this 4th day of May 2006 hereby

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART**, and Plaintiff may not recover for any injuries alleged to have occurred during the period when its corporate charter was revoked, *i.e.*, from September 9, 2002 until April 25, 2005, *see Accurate Construction Co. v. Washington*, 378 A.2d 681, 684 (D.C. 1977); *Community Credit Union Services, Inc., et al. v. Community Credit Union Services, Inc., et al.*, 534 A.2d 331, 335 (D.C. 1987); *Equal Rights Center v. Phifer Realty, Inc., et al.*, Civil Action No. 05-7190 (December 22, 2005 J. Weisberg) (order granting in part defendants' motion for summary judgment); it is

DOCKETED In Chambers   MAY    4 2006

MAILED From Chambers   MAY    4 2006



1

C

FURTHER ORDERED that the remainder of Defendants' Motion for Summary Judgment is DENIED; it is

FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment is GRANTED as to the claim of source of income discrimination; it is

FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment is DENIED as to the claim of racial discrimination; it is

FURTHER ORDERED that Third Party Defendant's Motion to Dismiss is GRANTED; and it is

FURTHER ORDERED that Plaintiff and Defendants shall have until June 15, 2006 to complete discovery.

Gerald I. Fisher
Associate Judge

Copies to:

Steven K. Davidson
Michael J. Baratz
Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795

Isabelle Thabault
Donald L. Kahl
Washington Lawyers' Committee for Civil Rights and Urban Affairs
11 Dupont Circle, NW, Suite 400
Washington, DC 20036

Richard W. Luchs
Roger D. Luchs
Greenstein Delorme & Luchs, P.C.
1620 L. Street, N.W. Suite 900
Washington, D.C. 20036

2

Hans Froelicher
Office of General Counsel
District of Columbia Housing Authority
1133 North Capitol Street, NE
Washington, DC 20002

Frederick A. Douglas
Douglas Boykin & Oden, PLLC
1401 Eye Street, NW, Suite 310
Washington, DC 20005

3

# EXHIBIT D

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

EQUAL RIGHTS CENTER,

    Plaintiff,

v.

THE UNNAMED CO-TRUSTEES OF THE
IRREVOCABLE TRUST FOR ESTELLE
GELMAN, A TRUST CREATED BY TRUST
AGREEMENT DATED JANUARY 2, 1959,
et al.,

    Defendants.

Case No. 05-0002766
Calendar No. 2
Judge Michael Rankin

### ORDER

UPON consideration of Defendants' Renewed Motion to Dismiss Complaint,

it is by the Court this _21_ day of _July_, 2006, hereby

ORDERED, that the Motion is GRANTED; and it is

FURTHER ORDERED, that the Complaint is hereby dismissed, due to its

forfeiture of its corporate charter in 2002, and its failure to reinstate its charter until

April 25, 2005. _The Court has read and agrees with the rationale expressed by Judge Weisberg – Ca no. 05-7191, Equal Rts Ctr v. Horning Bros. Consequently, I have reconsidered my earlier ruling and now Grant the Renewed motion to dismiss._

_Michael Rankin_
The Hon. Michael L. Rankin
Judge, Superior Court for the
District of Columbia

MAILED From Chambers  JUL 2 1 2006
DOCKETED In Chambers  JUL 2 1 2006

-1-

Copies to:

Stephen A. Horvath, Esquire
Melissa H. Katz, Esquire
TRICHILO, BANCROFT, MCGAVIN,
 HORVATH & JUDKINS, P.C.
P.O. Box 22
Fairfax, Virginia 22038-0022
*Counsel for Defendants, Gelman Management Company, L.P. and GMC, Inc.*

Leslie M. Turner, Esquire
Michele Roberts, Esquire
Robert P. Delonis, Esquire
AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
1333 New Hampshire Avenue, N.W., Suite 400
Washington, D.C. 20036
*Counsel for Plaintiff, Equal Rights Center*

and to:

Isabelle M. Thabault, Esquire
Robert M. Bruskin, Esquire
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
*Counsel for Plaintiff, Equal Rights Center*

-2-

TOTAL P.03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARAH BOURBEAU, et al.          :
                               :
          Plaintiffs,          :
                               :
     v.                        :     Case No. 1:07CV00164
                               :     Judge: Paul L. Friedman
THE JONATHAN WOODNER CO.,       :
                               :
          Defendant.           :
                               :

### ORDER

Upon consideration of Defendant's Motion to Dismiss for Failure to State A Claim For

Which Relief May Be Granted, it is by the Court this _____ day of _____, 2007

**ORDERED** that the Motion is granted; and it is

**FURTHER ORDERED** that the Complaint is hereby dismissed.

_____
Judge

Copies to:

Richard W. Luchs, Esq.                    Robert Bruskin, Esq.
Roger D. Luchs, Esq.                      Isabelle M. Thabault, Esq.
William C. Casano, Esq.                   Washington Lawyer's Committee for
1620 L Street, N.W., Suite 900                Civil Rights and Urban Affairs
Washington, DC  20036                     11 Dupont Circle, N.W., Suite 400
                                          Washington, DC  20036
Thomas A. Reed, Esq.
Preston Gates Ellis & Rouvelas Meeds, LLP
1735 New York Avenue, N.W., Suite 500
Washington, D.C.  20006

307608V1