# EXHIBIT A

**Page 1**

```
 1              SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
 2                           CIVIL DIVISION
 3    -------------------------------x
 4    EQUAL RIGHTS CENTER             :
 5              v.                    :   Civil Action
 6    E&G, et al.,                    :   CA-05-2761
 7              Defendants.           :
 8    -------------------------------x
 9                                    Washington, D.C.
                                      Wednesday, May 3, 2006
10        The above-entitled matter came on for a trial
      before the HONORABLE GERALD FISHER, Associate Judge, in
11    Courtroom Number 518, commencing at approximately 2:06
      p.m.
12
          THIS TRANSCRIPT REPRESENTS THE PRODUCT
13        OF AN OFFICIAL REPORTER, ENGAGED BY THE
          COURT, WHO HAS PERSONALLY CERTIFIED THAT
14        IT REPRESENTS TESTIMONY AND PROCEEDINGS OF
          THE CASE AS RECORDED.
15
      APPEARANCES:
16
          On behalf of the Plaintiffs:
17
          MICHAEL BARATZ, Esquire
18        DONALD KAHL, Esquire
          Washington, D.C.
19
          On behalf of the Defendants:
20
          ROGER LUCHS, Esquire
21        WILLIAM CASANO, Esquire
          Washington, D.C.
22
          On behalf of the District of Columbia:
23
          FREDERICK DOUGLAS, Esquire
24        WASHINGTON, D.C.

25    JENNIFER WARREN         Telephone (202) 879-1086
      Official Court Reporter
```

1

**Page 2**

**PROCEEDINGS**

THE DEPUTY CLERK: Your Honor, before the Court for hearing in the matter of Equal Rights Center versus E&G Group and others, Civil Action Number 2761-05.

THE COURT: Could counsel just identify themselves for the record, please?

MR. BARATZ: Your Honor, Michael Baratz from Steptoe & Johnson. Along with me here today is Donald Kahl from Washington Lawyer's Committee on behalf of plaintiff Equals Rights Center.

THE COURT: Good afternoon to the both of you.

MR. LUCHS: Roger Luchs, Your Honor, on behalf of the defendant, and with me is William Casano from our firm.

THE COURT: Okay. Good afternoon to the both of you as well.

MR. DOUGLAS: And good afternoon, Your Honor. Frederick Douglas from Douglas Boykin representing the D.C. Housing Authority.

THE COURT: Mr. Douglas.

MR. DOUGLAS: I notice the Court was about ready to forget me, you can.

THE COURT: I was only ready to forget you, because my memory was the last time that we were here I thought you had asked, and I had given you permission to not necessarily be here, but be that as it may, I'm going

2

**Page 3**

to address your issue as part of today's hearing and yes, I'm glad you're here.

MR. DOUGLAS: Thank you, Your Honor.

THE COURT: Let me start off by apologizing. The last time that we were together I had a brief discussion with Mr. Luchs about sort of what the governing law was with regard to my resolution of these matters. And as I said before I began that discussion I hadn't really read the pleadings very closely. And having done so, I think I was a little sort of misguided on what the facts were, and unfortunately, the parties then went back and filed supplemental pleadings, and I guess spent some time doing that. It's probably a good reason why we don't have a juris prudence that allows attorneys' fees awarded against courts, but I'm sorry that you went through all of that because it really wasn't something that required a lot of time, but anyway I now have that for future usage.

What I had intended to do today was to announce my rulings on the three motions that are at issue in this case, that is, defendants' motion for summary judgment, plaintiffs' motion for summary judgment, and the third party, that is, the District of Columbia's motion to dismiss. And it's still my intention to do that. I had originally intended to do that without really much discussion or requests to the parties. But as I was

3

**Page 4**

reading through and doing some research trying to get prepared today, there are some issues that I think I need to address, and I would invite some response from the parties.

The issue that exist both in defendants' motion for summary judgment and plaintiffs' motion for summary judgment in some ways are overlapping. So I'll try to deal with those issues and then decide them as they apply to each motion rather than trying to segregate them, because if I resolve them one way there's one result. If I resolve them another way there may be another result.

The first question that exists is the one that the defendant raised in his motion which is the standing of the Equal Rights Center. And I know that I have twice previously addressed that issue and denied the defendants' motion to dismiss for non-corporate status on behalf of ERC. And by that I mean ERC's charter had been revoked and was in a state of revocation during the events, part of the events that they've complained of and was not reinstated until April of 2005.

Since we were last together, and since I last addressed that issue, I did go back and read Judge Weisberg's opinion and then spent some time reading the authorities that he had cited. His opinion was the decision in the case of Equal Rights Center versus

4

```
 1  Phifer -- that's P-H-I-F-E-R -- Realty, addressing exactly
 2  the same issue, because we're dealing, again, the status of
 3  the Equal Rights Center, and he relied in that case on the
 4  District of Columbia's Court of Appeals' decision in
 5  Accurate Construction Company versus Washington, which is
 6  at 378 A.2d 681, and also the decision by the District of
 7  Columbia Court of Appeals and Community Credit Union
 8  Services Incorporated et al. versus American Federation of
 9  Community Credit Union et al. which is at 534 A.2d 331,
10  which is a 1987 opinion with the District of Columbia Court
11  of Appeals.
12          And I must say that I'm hard-pressed to -- I
13  don't see any distinction, obviously, between the situation
14  before Judge Weisberg and having now read these other cases
15  more closely. I'm having some difficulty in understanding
16  how the position that the defendants' take, and this is not
17  the correct position. So I'd like to hear whatever the
18  plaintiffs may have to say. I know I didn't tell you that
19  this question was coming, but I know it's been extensively
20  briefed, and I'd hear from either plaintiffs' counsel on
21  that.
22          MR. KAHL: Your Honor, with all do respect to
23  Judge Weisberg, first of all, he did not grant summary
24  judgment in his rulings, rather he sought to limit --
25          THE COURT: He limited the claims as to the time
```

Page 5

```
 1  period that ERC could pursue.
 2          MR. KAHL: That's correct. So in the first
 3  instance this really isn't a standing issue the way it's
 4  normally presented to the court.
 5          THE COURT: Correct.
 6          MR. KAHL: And number two, I would suggest to you
 7  that, first of all, that interpretation ignores the plain
 8  language of the statute.
 9          THE COURT: So does Accurate Construction
10  Company.
11          MR. KAHL: They do, and I would suggest that is
12  not the proper thing to do in the first instance. But when
13  you look at the two cases that the Court has identified, in
14  both of those instances, what the Court struggled with, I
15  would suggest, is the situation where they had the plain
16  language of the statute that required a result and facts
17  which mitigated another way; that is, a party attempting to
18  assert the retroactivity that is plainly called for by the
19  statute in order to act as a shield from its own liability,
20  or in order to impose that liability on an entity that was
21  a shell as opposed to their own personal liability.
22          There is no such struggle here. Here the party
23  attempting to avoid the plain language of the statute is
24  allegedly the bad actor. This is not a situation where the
25  ERC's individual officers or directors, as in the cases
```

Page 6

```
 1  before you are trying to say, by reinstatement you would
 2  allow the shield of the corporate entity to come in between
 3  a plaintiff and recovery against a guilty individual, a
 4  tort feasor, for instance, or someone attempting to avoid,
 5  in one of the cases, a claim -- a credit if you will --
 6          THE COURT: Right.
 7          MR. KAHL: -- a creditor/debtor situation. This
 8  is what we have here. Here you have the situation where
 9  the ERC has had the same mission, whether it was
10  incorporated, suspended, and acting as an incorporated
11  association, or ultimately, reinstated and retroactively
12  made whole again as if the revocation had never occurred --
13          THE COURT: But can I ask you this, in the
14  concluding paragraph -- and I forgot to bring the case up
15  here -- but in Accurate Construction Company, in its
16  concluding paragraph it sort of, in general, addresses
17  those sorts of equitable situations where there might be
18  some reason why we would not impose the consequence of the
19  corporation being unable to act or unable to pursue claims,
20  and that is if it was ignorant of its lack of registration
21  or something like that.
22          Now, I didn't see any discussion of that in Judge
23  Weisberg's order, but I don't know if -- I mean, isn't that
24  really the only scenario under Accurate Construction
25  Company, and it doesn't seem to distinguish between shield
```

Page 7

```
 1  and sword cases. It just seems to say you're either
 2  incorporated or not incorporated, and maybe if you didn't
 3  know you were incorporated, you might have an equitable
 4  argument for that.
 5          MR. KAHL: Well, even if that were the only part
 6  of those cases in the analysis that were applicable, let's
 7  just assume for a moment that it is, the only evidence
 8  before the Court is exactly that with respect to the Equal
 9  Rights Center. If you go back to the affidavits that were
10  submitted from the executive director that it's quite clear
11  that it was an inadvertent failure to pay this -- or to
12  file this --
13          THE COURT: There were two reports to be filed.
14          MR. KAHL: -- that resulted in that. There was
15  no contrary evidence offered. There is no other evidence
16  that it was an inadvertent failure, not intentional to the
17  contrary the executive director testified. They always
18  intended to retain their corporate status, they were not
19  trying to wrap up their business, and that it was
20  inadvertent.
21          THE COURT: Did they pay their fees and
22  everything?
23          MR. KAHL: They were ultimately required to do
24  that Judge. As a result --
25          THE COURT: But I mean while the period was going
```

Page 8

**Page 9**

1  on. I mean, what would happen at the end of the year or
2  whatever the period was when they were supposed to pay
3  their registration fees with the District of Columbia,
4  whatever yearly fees. Did they pay those? Were those --
5      MR. KAHL: Those fees are tied to the two-year
6  reports, and so the way the statutory structure works is
7  the report and the fees are to be filed at periodic basis.
8  If there is not, then there is a penalty because what
9  you've done is you violated a regulatory rule of the
10 District. There is a penalty for that. That penalty was
11 paid along with all of the fees, and that's why the
12 statutes says if you do all of this, then it's as if it
13 never occurred. And of course, Judge Weisberg ignores --
14 and for the life of me the case name has left my mind --
15 but it's in our responsive briefs in all of them.
16     There is another D.C. case where the Court as
17 much says a third party, such as the defendants here,
18 should not get in the middle or receive the benefit of what
19 amounts to a regulatory error between a corporate entity
20 and the District so long as that corporate entity does what
21 they're called upon to do once they find out that there has
22 been deficiency in filings or whatever and that's exactly
23 what you have before you, Judge.
24     THE COURT: Mr. Luchs, you want to respond at all
25 to that?

**Page 10**

1      MR. LUCHS: Yeah, if I could briefly, Your Honor.
2  A couple of things. When you comment on the language
3  regarding certain equitable situations, I think that is
4  referring to cases where a defendant tries to take
5  advantage of the situation that their charter has been
6  revoked and then reinstates to try to protect themselves.
7      THE COURT: Tries to take -- you're saying a
8  defendant whose charter has been revoked?
9      MR. LUCHS: Right. And you see I have a case, in
10 fact, and it is one of the ones that Accurate -- it cites
11 Accurate. It's called National Paralegal Institution
12 versus Bernstein. And what happened is that I sued
13 basically -- my recollection is a little fuzzy -- it's an
14 individual who had traded as a corporation, whose charter
15 had been revoked, and then literally, while the case was
16 pending, I got a judgment while the case was pending on
17 appeal. He reinstated the corporation, and tried to say --
18 and say, well, you know, they can't hold me because I have
19 reinstated. This goes back --
20     THE COURT: Right. Couldn't hold him during the
21 period of time that he wasn't in that status, you mean, was
22 in a corporate -- was in --
23     MR. LUCHS: That's right.
24     THE COURT: But I thought those were two separate
25 situations. I mean, I thought the court in Accurate was

**Page 11**

1  saying we're not going to allow that to happen. In some
2  way you can use that as a shield against any kind of
3  liability, but they also talk about other equitable
4  situations where there may have been, you know, lack of
5  knowledge by the corporation that its charter was revoked,
6  things like that that I --
7      MR. LUCHS: I have to say I don't recall. But
8  their argument certainly couldn't work in a case like this
9  for the reason that -- I mean, I would say a third to a
10 half of the entities we sue with charters and had them
11 revoked. They don't come in and say we didn't know it. If
12 that were the case -- if that were the exception, nobody
13 would have to comply with the law. And the fact of the
14 matter is when a charter was revoked, there is, to the best
15 of my knowledge under the statute, a notice sent out to the
16 -- either registered agent or last known addresses. Also,
17 it is also published in the newspapers. And in this
18 particular case, of course, ERC's charter was revoked --
19     THE COURT: 2002.
20     MR. LUCHS: -- about three -- three and half
21 years before during which period reports were due, during
22 which periods these were due and not paid. And as Mr. Kahl
23 said, it's only when actually -- and they've acknowledged
24 this when we brought up in the course of this litigation --
25 that they went in and reinstated it, which is the time when

**Page 12**

1  they filed past reports which is what you're required to
2  do --
3      THE COURT: Right.
4      MR. LUCHS: -- and pay the fees.
5      One comment I don't really agree with, I know
6  people read Accurate and say, well, that's what the statute
7  says, but it certainly is what the Court of Appeals says,
8  but I recall Accurate says is if a corporation will have
9  all the powers that it has when its charter was revoked,
10 and I think that's what it means, that is, you get back the
11 powers that you had at time of revocation. What it does
12 not say, and if you reviewed this, you see a lot of state
13 statutes do say this, that any action taken in the interim
14 period would be deemed valid.
15     THE COURT: But there's nothing explicit.
16     MR. LUCHS: There's nothing like as there is in
17 other statutes, so I don't think the -- I don't think the
18 statute in Accurate are necessarily inconsistent, although
19 certainly the Court of Appeals' interpretation is what
20 governs.
21     THE COURT: Okay.
22     MR. LUCHS: Thank you.
23     THE COURT: All right. Let me -- I don't know
24 whether I'll decide that particular part of things today,
25 but even if I decided adversely to the plaintiff on that

1  issue, I do think that's consistent with what Judge
2  Weisberg ruled in Phifer. In ERC versus Phifer is there
3  still may be other claims that exists past the
4  reinstatement date and the plaintiffs would be able to
5  pursue those claims. Let me -- and I'll go back and reread
6  some of this. And I would just tell you I don't think it's
7  a very clear-cut issue, but I'll go back and reread these.
8      The second question that the defendants have
9  raised is the more general issue of standing. And I have
10 gone back and read the code, what I think are the leading
11 cases on that, including Executive Sandwich Shoppe versus
12 Carl Realty which is at 749 A.2d 724. And for purposes of
13 the court reporter, Shoppe in that instance is spelled
14 S-H-O-P-P-E. And also the Haven's Realty Corporation
15 versus Coleman, United States Supreme Court decision at 455
16 U.S. 363. That's a 1982 decision. And I've read the code
17 itself and the annotation to the code. That's section
18 2-1403.16 (A).
19     And I think that plaintiffs in this case have
20 made sufficient claims as to the consequences of the
21 refusal of the defendants to accept vouchers, to show that
22 there is -- that they do fall within the ambit of the
23 statute, and that there is sufficient harm alleged --
24 whether it will be proven I don't know -- but alleged to
25 provide them standing under, I think, a pretty broad

13

1  reading of the statute that exists in Carl Realty case, and
2  quite frankly, and sort of almost a parallel situation in
3  Haven's, where we had similar situations where a nonprofit
4  corporation was seeking to sue on behalf of the individuals
5  and the interest that it helped. So I would find that
6  there is standing under those authorities and the ones in
7  their progeny of cases.
8      The next question really is -- that has been
9  challenged by the defendants is whether their refusal to
10 accept tenants with Section Eight vouchers is
11 discrimination under the District of Columbia Human Right's
12 Act. I would -- I guess I would agree in theory that the
13 act doesn't prohibit landlords from refusing to accept
14 applications from persons with Section Eight vouchers, and
15 that is because it does provide the landlord with an
16 opportunity to review the payment history and credited
17 other history of the applicants. So the mere fact that
18 they may have a voucher doesn't necessarily mean one has to
19 take the tenant.
20     But I don't really think that that's what
21 happened here, and I know the plaintiffs don't view that.
22 I think what the defendants have done in this case is they
23 haven't really looked at the applicant's payment history.
24 What they've done is look at the District of Columbia's
25 payment history and said that the District of Columbia has

14

1  not reimbursed them or has made reimbursement so cumbersome
2  for them that it's not worth their while to accept
3  applicants who have Section Eight vouchers. And so I think
4  it's a very -- I don't really think that what defendants
5  are claiming they've done is exactly what has occurred
6  here, and sort of brings us to the next issue as I see it,
7  and that is whether the actions of the defendants is based
8  on source of income -- source of income ought to be in
9  quotation marks.
10     It's a term of art used in D.C. code section
11 2-1402.21 which provides discrimination in whole or in part
12 based on source of income. And then if you go to 1402.2,
13 it defines source of income as quote the point or cause or
14 the form or transmittal of gains of property accruing to a
15 person in a stated period of time, including, but not
16 limited to, and then there are ellipses from federal
17 payments.
18     The defendants indicate that they believe that a
19 proper interpretation of that statute allows them to look
20 at the -- not merely the payment history of the tenant but
21 of the District of Columbia, and I reject that motion. I
22 don't think that's a proper interpretation of the statute.
23     And I also reject the argument that's been raised
24 by the defendants that the District of Columbia in enacting
25 that particular provision is not talking about individual

15

1  Section Eight vouchers, but was talking about
2  building-based situations where the Section Eight voucher
3  applies to the edifice not to the individual. As I looked
4  through the D.C. code provisions, and I'm looking in
5  particular at Section 42-2851.06, which is the statute that
6  defendants claim differentiates between the two types of
7  Section Eight assistance, if you look at the subsections of
8  that statute, of subsections A and B, they refer to quote
9  monetary assistance provided to an owner of a housing
10 accomodation under Section Eight, and then there are
11 ellipses again, either directly or through a tenant. They
12 meant to only limit it to dwelling-type Section Eight
13 housing. They wouldn't have provided the other
14 alternative.
15     And I think that later on the District of
16 Columbia's counsel's acknowledgement that in later
17 legislation that it simply misplaced a parallel coverage
18 for Section Eight vouchers and sort of acknowledge that in
19 the Technical Amendments Act of 2005, which is now codified
20 at D.C. Section 2-1402.21 (E).
21     And they made it plain that this applied, and
22 that didn't go into effect until April of 2005. I believe
23 that the counsel all along viewed the two types of Section
24 Eight housing as being sources of income and were in no way
25 attempting to differentiate between them.

16

It takes us to the next issue, which is I don't believe that the Human Right's Act conflicts with federal law. I don't think this either expressed preemption, field preemption, or conflict preemption. I don't really intend to spend a lot of time discussing that here. The arguments are set forth in both parties' pleadings, maybe more fully in the pleadings of the plaintiff who argues strongly that there is no preemption, and I agree with that. I think this is an area that the actions of the District of Columbia government coextensive with the actions of the federal government in no way conflict with it.

So with regard to the defendants' motion for summary judgment, I want to still consider the issue of the incorporation issue. But I think on all other issues that they have raised in their motion for summary motion, I will deny their motion, which then takes me to the plaintiffs' motion.

Plaintiffs seeking summary judgment on two claims. One is that there is discrimination on the basis of source of income, and the second is that there's racial discrimination. What they point out is that the defendants -- defense to the first claim -- actually to both claims, but primarily to the first claim is that, I believe, defendants have raised essentially a business necessity claim, that is, that they can't operate effectively, profitably, if the District of Columbia won't pay the reimbursements on time.

And I think that there's two impediments to that particular argument, which is number one, the business necessity defense is specifically made inapplicable under D.C. Code Section 2-1401.03 (A). And as I looked at the facts in this case there doesn't seem to be really an impossibility. There does seem to be an enormous amount of inconvenience and perhaps even significant financial loss. I don't think that's been exactly quantified in this case.

But for whatever reasons that the District's failure to promptly and fully reimburse defendants and other landlords for this type of vouchering system, this type of rent payment, is deeply disturbing, but I don't think it rises the level of impossibility. So I do think on the claim of source of income discrimination that the decision that the defendants have made in this case is, in fact, source of income discrimination.

I don't preclude that the evidence is such that I could find that there's a discrimination on the basis of race, at least not for purposes of summary judgment. And I say that for a couple of reasons. One is I do think that the timing of the tester investigations that the plaintiffs used, given that they may have been during a period of time when they had no status because they were disincorporated are in some question.

Secondly, I think that all that probably does in the end, even if I accept that evidence as it has any prima facie proof, and I realized that the plaintiffs have not necessarily presented direct proof to the contrary, but I don't think that that's sufficient in and of itself. The results of the studies are sufficient in and of themselves to establish that there was racial discrimination, so I would deny that motion -- that part of the motion.

That leaves us with the final issue that's before me, which is the third party District of Columbia's motion to dismiss. And that, as what I have suggested a moment ago, is I think that the District of Columbia is much at fault for the situation that has prompted the actions of the defendants. I don't believe that they're a proper party to this lawsuit. I think whatever rights the defendants have against the District of Columbia are contractual or quasi contractual and maybe some statutory right to go after the District of Columbia, but quite frankly, it's for past nonpayment of Section Eight compensation. It has nothing to do with not paying the person who presents himself or herself now to the defendants to try to get an apartment.

But if the defendants want to go after the District of Columbia, Godspeed, I think they should or at least to try to find some way. And I do think it is, I guess I said it before, but it's deeply disturbing that the situation exists because it's creating an unnecessary burden on the landlords in this case, but I think that has do be an independent action against the District of Columbia. I don't think that the defendants in this case were they to lose the claim at trial and this action would be entitled to any kind of redemption from the District of Columbia. And so I grant the District of Columbia's motion to dismiss.

MR. LUCHS: Your Honor, can I respond to that for a moment?

THE COURT: Sure.

MR. LUCHS: You know there are three claims. It's just not an indemnity claim. And I think we have every right as a matter of law to bring a breach of contract claim, which is one of our claims here even if you deny the indemnity.

THE COURT: You can. But it's not part of this action. How is their breach of contract part of this action?

MR. LUCHS: It doesn't have to be under Rule 14 implead or I think if it arises out of the same transaction --

THE COURT: But it doesn't.

### Page 21

1  MR. LUCHS: I think it can.
2  THE COURT: I don't think it arises out of the
3  same transactions or occurrences because as I see the
4  problem here is today you've not been paid by the District
00:34 5  of Columbia.
6  MR. LUCHS: Right.
7  THE COURT: So the person who comes to your
8  apartment dwelling and says I have a Section Eight voucher
9  you say, sorry, I'm not going to take you because the
00:34 10  District of Columbia has not paid its past bills. That has
11  nothing to do with that person in my mind. As I have said
12  I think that qualifies as discrimination against that
13  individual. I think you can sue the District of
14  Columbia --
00:34 15  MR. LUCHS: I understand that.
16  THE COURT: -- independently on whatever theories
17  you have. I'm not rejecting your theories. It may be
18  indemnification as in some level being rejected but I think
19  just part of this, but you can sue them.
00:34 20  MR. LUCHS: So are you -- I mean, if I can go to
21  the indemnification issue. You know, Rule 14 specifically
22  contemplates indemnity. So are you ruling as a matter of
23  law that we have no right to indemnity from D.C.?
24  THE COURT: I don't see, as I read the authority
00:34 25  that's here. I don't believe you have the right to an

### Page 22

1  indemnity for what is happening here, which is prospective
2  denial of apartments that individuals bringing in Section
3  Eight vouchers. You see, if you were -- if this case were
4  about people in the past who you gave apartments to and
00:35 5  D.C. did not pay you for the Section Eight compensation for
6  that, I think that would be appropriate, but that's not
7  what this case is about in my view.
8  MR. LUCHS: I think it is part of what this case
9  is about because of our breach of contract claim --
00:35 10  THE COURT: Right, but --
11  MR. LUCHS: -- and their claim on damages based
12  on what -- how we've dealt with people in past or
13  perspective --
14  THE COURT: I understand that, but that to me is
00:35 15  a sort of a decision that you've made of how you want to go
16  about things. I don't know if you've sued the District,
17  but perhaps you have. But the person who walks in the door
18  today seeking an apartment has nothing to do with what the
19  District did about refusing to compensate for somebody
00:36 20  else's Section Eight voucher in the past.
21  MR. LUCHS: But they're seeking damages for past
22  discrimination, not just for the person who walks in today.
23  THE COURT: Right. No. No. I understand that,
24  but they're asking it for discrimination when you refuse to
00:36 25  allow to take somebody with a Section Eight voucher

### Page 23

1  claim --
2  MR. LUCHS: Right.
3  THE COURT: -- as opposed to your claim, that is,
4  for Section Eight vouchers that we took in the past we
00:36 5  didn't get -- the District of Columbia didn't compensate us
6  for that. That's not what their claims are about. Their
7  claims are about the people whose Section Eight vouchers
8  you never took. Their claim is that's discrimination.
9  My view of this is the District of Columbia
00:36 10  hasn't paid you in the past for when you did accept Section
11  Eight vouchers. You may be entitled to relief, but it
12  doesn't give you the right, in my view, to turn down the
13  next person who walks in the door with a Section Eight
14  voucher. That, in my view, is discrimination under the
00:37 15  statute.
16  MR. LUCHS: There's one other point that I'd like
17  to raise, Your Honor. You dealt with it in effect by
18  denying our motion, but I'd like to raise it directly. As
19  you know one of the points we've made is that they did not
00:37 20  identify any specific person or individual who has been
21  injured. Now we have acknowledged that we did stop taking
22  people, but as you know our argument is that doesn't
23  give -- they don't have standing because of our admission
24  unless they can present a real person who has been injured
00:37 25  by virtue of their action.

### Page 24

1  THE COURT: I realized that takes fine
2  distinction, and I guess in the end I think it's not a very
3  practical distinction because I don't really think there's
4  a dispute in this lawsuit that you have refused to take
00:37 5  people with Section Eight vouchers. And you are correct,
6  but they don't have a specific individual that they alleged
7  who was turned down, but they do have acknowledgments from
8  the defendants that they have turned down individuals
9  because of Section Eight vouchers. That's in part why I
00:38 10  can't make a determination that there's been any
11  discrimination based upon race because I have no idea what
12  the race of the individuals were down turned by you are.
13  But, I guess, I would say at some level for purposes of
14  standing, I'll either be right on wrong on this, that this
00:38 15  is a distinction without a difference.
16  Any questions from any other party?
17  MR. BARATZ: Your Honor, if I may for just one
18  moment. I want to make sure you I understood that you
19  granted plaintiffs' motion for summary judgment as to the
00:38 20  source of income.
21  THE COURT: That's correct. Now, the only
22  question is what time period?
23  MR. BARATZ: And I understand, and I think that
24  that's exactly where we go. If you were to apply Judge
00:38 25  Weisberg's decision in the same way, then as I read it our

| | |
|---|---|
| 1  damages -- or evidence of our damage would be cabined from | 1  And I know you have mediation coming up. |
| 2  prior to reinstatement. | 2      MR. LUCHS: Right. Our view also that we have |
| 3      THE COURT: Right. April to whatever the date | 3  not completed discovery because we were waiting for your |
| 4  was. | 4  ruling with respect to Housing Authority. Even though you |
| 00:39 5      MR. BARATZ: And the date was going forward. So | 00:41 5  have taken the position that the Housing Authority is not |
| 6  there are two categories of damages, diversion and | 6  paying is kind of irrelevant to these cases. There are -- |
| 7  frustration admission. And both of those damages have been | 7      THE COURT: I don't think it's irrelevant. It's |
| 8  going on forward because of the case the defendants' | 8  just not -- it may be not legally in terms of a legal |
| 9  conduct has continued, and so we could move to trial and | 9  issue. |
| 00:39 10  present evidence on the damages from that date forward and | 00:41 10     MR. LUCHS: No, I understand that. I didn't mean |
| 11  so if there's any effect of standing, our damages have been | 11  to mischaracterize that. But discovery is pertinent for |
| 12  continuing the entire time with respect to -- | 12  this reason. We do know, as it comes out, they were |
| 13      THE COURT: They may be, but I can't -- that to | 13  telling other landlords that you don't have to take Section |
| 14  me is ultimately a question of proof. | 14  Eight vouchers. Now, ERC has claimed damages in nearly |
| 00:39 15     MR. BARATZ: So then moving on along there, I | 00:42 15  $2,000,000 from us and every other landlord based on, you |
| 16  just wanted to also make sure that you denied the race | 16  know, not taking Section Eight vouchers. We have a right |
| 17  discrimination claim because there are facts that still | 17  to find out, if they know, who they've talked to and what |
| 18  remain in dispute. | 18  they said to those people because you can't get all those |
| 19      THE COURT: I think there are facts still in | 19  damages from each of us. You can't say Phifer owes two |
| 00:39 20  dispute. Again, you've done a study, and as I said, the | 00:42 20  million. ERC owes two million. DCHA's comments have had |
| 21  viability of that study given that it may have been done | 21  an impact in damages, i.e., if they're giving out wrong |
| 22  during the time when the corporation was discorporated, | 22  information, we should not be responsible for damages. |
| 23  this gives me some pause; but even assuming that that study | 23      THE COURT: May not be attribute -- at least a |
| 24  were evidence in this case, I don't know. I have no | 24  factual issue that would be attributable that a jury can |
| 00:39 25  evidence of the actual discrimination in this case because | 00:42 25  determine or not. |
| 25 | 27 |
| 1  there are no specific people who have been identified, nor | 1      MR. LUCHS: Right. |
| 2  do I have -- I mean -- although there may not have been a | 2      THE COURT: Can I ask how much time you will need |
| 3  specific response to that, it seems to me maybe it's an | 3  for discovery? |
| 4  expected response on my part. My guess is that the | 4      MR. LUCHS: I guess we can probably do it within |
| 00:40 5  implicit response that has been throughout these pleadings | 00:42 5  the next 30 days or so, 30, 45 days. It really depends |
| 6  from the defendants is we actually don't care what the race | 6  more on their, you know, information we get from them and |
| 7  of the individual is. They could be black, they could be | 7  whether their people are available. I don't know if all |
| 8  white, they could be Hispanic. They could be whatever they | 8  the people who are giving out the information are even |
| 9  are. It's not that we're intending in any way to act in a | 9  there anymore, that sort of thing. |
| 00:40 10  racially discriminatory fashion. Our intent is to become | 00:43 10     THE COURT: Mr. Baratz, you want to respond to |
| 11  compensated. And I realized that's not dispositive of | 11  that? |
| 12  anything but that's evidence that to a fact finder may | 12      MR. BARATZ: Your Honor, both defendants in the |
| 13  determine the outcome. | 13  third party had opportunity to do discovery during that |
| 14      MR. BARATZ: And I appreciate those comments. Of | 14  case. Now, while the motion to dismiss was pending they |
| 00:40 15  course, those go more to intentional racial discrimination | 00:43 15  opted not to do it and now the motion to dismiss has been |
| 16  versus the desperate impact which can be independent -- | 16  granted. So this would be allowing discovery against the |
| 17      THE COURT: That's correct. | 17  third party to go forward. |
| 18      MR. BARATZ: And we're happy to present facts. | 18      I also don't think that in light of Your Honor's |
| 19  And at this point I think it makes sense to either request | 19  decision the source of income, with respect to liability, |
| 00:41 20  a trial date on these issues or to set at least a status | 00:43 20  is a set matter in this case -- that whatever D.C. Housing |
| 21  conference after our mediation, which is next Tuesday, and | 21  Authority may or may not have told landlords has much to do |
| 22  I think that we could try the issues of compensatory | 22  with damages. The damages that they are particularly |
| 23  damages, punitive damages, injunctive relief, and any | 23  talking about is frustration omission. That means its the |
| 24  evidence that we will have on the race discrimination. | 24  Equal Rights Center combatting prospectively those issues |
| 00:41 25     THE COURT: Mr. Luchs, what's your view on that? | 00:43 25  to combat the discrimination prospectively that was caused |
| 26 | 28 |

**Page 29**

1  by these defendants, and so that prospective relief --
2  that's the theory of frustration.
3      THE COURT: Still caused by those, isn't that the
4  problem? I mean, isn't that what Mr. Luchs is saying? So
5  if -- let's say you had ten people who had Section Eight
6  vouchers and four of them are told or the District of
7  Columbia tells either landlords you don't have to accept
8  these people, and the others the landlords just
9  independently on their own make the decision not to accept
10 them, then isn't the cause by issue affected by that?
11     MR. BARATZ: I would say, Your Honor, that under
12 theories of joint and civil liability you could go after
13 any one of those landlords for the total harm. And while
14 certainly ERC can't double dip, and there may be certain
15 influences, recovering from one landlord for all the damage
16 caused all the landlords is acceptable.
17     THE COURT: Well, I don't know whether that's
18 correct. I would somehow doubt that to tell you the truth,
19 but I don't know whether that's correct. But I'm willing
20 to give 30 days additional discovery. I don't think that's
21 a lengthy period of time.
22     MR. DOUGLAS: Your Honor?
23     THE COURT: Yes, Mr. Douglas.
24     MR. DOUGLAS: Since I'm the party against whom
25 the discovery is going to be taken, it's now May the 3rd.

**Page 30**

1  I know that I'm tied up in other litigation for DCHA and I
2  would ask that the Court be generous and give us until June
3  the 15th to do it.
4      THE COURT: That's 45 days or so.
5      MR. BARATZ: That's fine, Your Honor.
6      THE COURT: June 15th.
7      MR. LUCHS: Your Honor, that's fine. Let me just
8  add one thing -- other thing. One reason we haven't done
9  discovery is since the beginning of the year our people has
10 been meeting with DCHA people to try to resolve that
11 difference. Frankly, it has not made a lot of progress,
12 but in the interim it was agreed that discovery would not
13 be done.
14     THE COURT: Can I just ask you this -- and
15 neither sides needs to -- three sides here -- none of the
16 three sides need to respond -- but is there a methodology
17 of a situation where we could get the parties in where we
18 could resolve these matters collectively? I mean, I know
19 you're going through mediation, but I don't know who the
20 mediator of the situation is. I know D.C. is a prime actor
21 in this, although I just let them out of the lawsuit, I
22 don't think that lets them out of any responsibility. And
23 I'm just wondering -- I mean, I'm happy to have people
24 litigating in front of me, but probably happier to see if
25 they can't resolve these things in some reasonable way.

**Page 31**

1      MR. KAHL: Judge, if I might? You know, you
2  focus on one of the real impediments to that going on and
3  that is there really are two very distinct theories of
4  liability and damages. There are the contractors'
5  statutory claims that may exist between the defendant and
6  the D.C. Housing Authority under the various HAP contracts
7  who's been paid and what amount of those kinds of things,
8  and that's very much in the traditional sense of a
9  commercial claim that's subject to accounting and
10 negotiation and this and that. And they've obviously been
11 doing that. But that's far different from the
12 discrimination issues, the civil right issues that go
13 between the plaintiffs and the defendants and there has
14 been --
15     THE COURT: Well, that's because --
16 I mean, that's, quite frankly, because of the legal
17 segregations of those claims that I have made. I mean --
18 but they are practically tied. And I have made my ruling
19 what I think is correct under the law, but I don't know
20 what a landlord is supposed to do when they have a large
21 number of Section Eight tenants and they're not getting
22 reimbursed for it. And it's -- maybe they're able to
23 operate and, you know, they own a lot of properties where
24 they continue to get by but certainly is a major impediment
25 to efficient management.

**Page 32**

1      And my guess is that it has other secondary
2  repercussions, like inability to do repairs which then turn
3  into housing code violations which deal with issues of
4  habitability. And so I'm just wondering if there's kind of
5  a global look at this case or these cases to be taken. It
6  might at some level solve everybody's concerns --
7      MR. LUCHS: Your Honor.
8      THE COURT: -- and maybe not solve everybody's
9  but make everybody a little bit unhappy.
10     MR. LUCHS: Our hope was to try to reach an
11 arrangement with the District whereby we reached an
12 agreement on what is owed and they acknowledged there's
13 some money owed. But there's also -- they've acknowledged
14 a specific sum.
15     They've also made promises to pay us a certain
16 amount by mid-March. It didn't happen. And that's our
17 problem. If we can get that resolved and get paid, our
18 client is willing to accept less than a hundred percent of
19 the dollar. It might have a practical impact on the rest
20 of it. Our client is not opposed to going back into
21 Section Eight if they can get some resolution about
22 standing amounts and some kind of assurance that is going
23 to get better in the future, although, it hasn't yet.
24     So that's the practical way to deal with it, but
25 we're not getting very far with DCHA.

```
 1        THE COURT: Mr. Douglas?
 2        MR. DOUGLAS: Your Honor, I hesitate to speak
 3   because --
 4        THE COURT: Because you're out of the case and
 5   you're on good grounds right now.
 6        MR. DOUGLAS: But I'm compelled to. The issues
 7   of public housing in the District of Columbia are very,
 8   very complicated. They're also impacted by rules and
 9   regulations by the parent here. And the parent here really
10   is HUD, it's not DCHA. DCHA is a passthrough. There are
11   certain ways in which you get money. And I'm the first to
12   say when there are times when the system is very
13   complicated; very, very cumbersome; and there are problems.
14        And what has to happen there is that a landlord
15   as to do something. One of the things that you do
16   basically is you come down and complain. If worse comes to
17   worse, you sue. DCHA has been sued by its landlords.
18        Now, if a person makes a choice as to what they
19   will do because the program itself presents the issues for
20   them, that really, you know, to sit here and say that it's
21   DCHA issue, I think is a bit much. It really isn't.
22        THE COURT: And I don't want to be misunderstood
23   on this. Again, I sort of found legally what I think are
24   the responsibilities here. But I guess it would be very
25   helpful if the landlords were -- if there was a mechanism,
                                                         33

 1   I don't know if one exists, where landlords are not placed
 2   in the position where they make, what I have now concluded,
 3   are wrong decisions. And, you know, I don't know if
 4   there's a way in this case to address that. Maybe it's
 5   just a problem. I don't know enough about the Section
 6   Eight reimbursement problem or the passthrough that the
 7   District of Columbia does. If there's a way to remedy the
 8   financial shortfall here so that these landlords can
 9   promptly get back in Section Eight without having us to
10   spend a lot of time litigating that.
11        MR. DOUGLAS: Your Honor, if -- and I'm sure the
12   Court has kept up with it. What's happening nationwide is
13   HUD is cutting the amount of funds that go to public
14   housing authorities. And that's causing some housing
15   authorities to -- to really close in size. There are a
16   number of Section Eight vouchers that we had two years ago
17   that has been greatly reduced. In the District of Columbia
18   the District counsel has gotten into public housing and for
19   whatever it's worth, they have in terms of pumping money
20   into the system, they've looked at, what the Housing
21   Authority has been doing, and what it's elected to is that
22   allow the Housing Authority to manage it. And, you know,
23   not saying -- well, I think it's a bit of confidence on
24   their part. And it's unfortunate that we're here. The
25   Housing Authority, of course, is willing to sit down with
                                                         34

 1   anybody and try to work out a system, but as I said in the
 2   beginning we're not part of this one. Thank you, Your
 3   Honor.
 4        THE COURT: Well, you know, I invite the parties
 5   -- although the District is no longer a party of this case
 6   -- to try to work out something collectively. And again
 7   if -- I will talk with my colleagues to see if anybody has
 8   ideas about any mechanism that might be of assistance to
 9   you, but I'd be happy to employ it if it would recover this
10   lawsuit -- help to resolve the broader problem that exists,
11   but I am where are I am at this point. There is going to
12   be 45 days of discovery. So discovery will be extended
13   until May 15th. What is your --
14        MR. LUCHS: June 15th.
15        THE COURT: I'm sorry. June 15th. What is your
16   date for mediation?
17        MR. BARATZ: Tuesday.
18        THE COURT: So that probably will need to be
19   vacated, correct, or you think you can go forward with
20   that? I guess this is really a damage issue. You think
21   you can go forward with mediation without completing
22   discovery on these other issues?
23        MR. LUCHS: I don't think at this point it would
24   be terribly productive because we just don't know what
25   we're going to hear from DCHA as to who they've told and
                                                         35

 1   what, what the basis of their opinion was, stuff like that.
 2   That might have a big impact on how -- our views in
 3   settling the case.
 4        THE COURT: What's your view? I mean, I'm not
 5   just sending you to mediation just to go. I hope it would
 6   be useful, but I don't know if it would be for you.
 7        MR. BARATZ: Your Honor, I would hope after your
 8   finding today, at least with liability with respect to
 9   source of income, that would have some difference with
10   Mr. Luch's client and that it would be at least productive
11   to move ahead in trying to resolve this matter without
12   having to go through additional discovery and everything
13   else that comes with it.
14        THE COURT: Right. What I will do for now is
15   leave the mediation date as it is. They will set a
16   pretrial sometime after that, within 60 days, I think. And
17   if it turns out that discovery provides some incentive to
18   have further mediation, we'll send you back to further
19   mediation or we'll deal with it at pretrial.
20        MR. LUCHS: One other matter that obviously would
21   have an impact is the Court's ruling on the corporate issue
22   -- that may be, but we're prepared to come down here --
23        THE COURT: All right.
24        MR. LUCHS: -- irrespective.
25        THE COURT: I will -- I can try to get a final
                                                         36
```

```
 1  order out on all of this. It won't be a lengthy order.
 2  But on the corporation issue I just want to do a little bit
 3  more research on that, and I'll try to get something out in
 4  the next couple of days. Okay?
 5          MR. BARATZ: Thank you, Your Honor.
 6          MR. LUCHS: Thank you, Your Honor.
 7          MR. KAHL: Thank you, Judge.
 8          (Whereupon, the proceedings were concluded at
 9  2:57 p.m.)
10
11
...
25
```

37

```
 1              CERTIFICATION OF REPORTER
 2
 3          I, Jennifer Warren, an Official Court Reporter for
 4  the Superior Court of the District of Columbia, do hereby
 5  certify that I reported, by machine shorthand, in my
 6  official capacity, the proceedings had upon the hearing in
 7  the case of the EQUAL RIGHTS CENTER versus E&G, Civil Action
 8  Number CA -- 05-2761 in said court on the third day of May,
 9  2006.
10          I further certify that the foregoing 38 pages
11  constitute the official transcript of said proceedings, as
12  taken from my machine shorthand notes, together with the
13  back-up tape of said proceedings to the best of my ability.
14          In witness whereof, I have hereto subscribed my
15  name, this the tenth day of May, 2006.
16
17
18                      Jennifer Warren
19                      JENNIFER WARREN
20                      Official Court Reporter
```

38

RECEIVED 2006 MAY 10 P 2:54 COURT/REPORTING/DIVISION DISTRICT OF COLUMBIA COURTS