**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SARAH BOURBEAU, et. al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No: 1:07CV00164 |
| v. | ) Judge: Paul L. Friedman |
| | ) |
| | ) |
| THE JONATHAN WOODNER CO., | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**PLAINTIFF EQUAL RIGHTS CENTER'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Plaintiff, Equal Rights Center ("Plaintiff" or "ERC"), respectfully submits this

Memorandum in Opposition to the Defendant, The Jonathan Woodner Company's

("Woodner's") Motion for Summary Judgment, filed June 2, 2008. Defendant's motion

should be denied.[1]  ERC has sufficiently pled injury caused by Woodner's discriminatory

practices and policy during the period following the reinstatement of ERC's corporate

status.  In denying Woodner's earlier motion to dismiss, this Court has already ruled in

ERC's favor with respect to the sufficiency of its pleading.  *See* Opinion dated April 17,

2008 ("4/17/08 Op.").  If ERC can prove the allegations in its Complaint with respect to

---

[1] Plaintiff Sarah Bourbeau's claims are not the subject of this motion.

Woodner's continuing discriminatory policy, ERC will prevail at trial.  Therefore, it has presented a genuine issue of material fact sufficient to defeat summary judgment.

Conspicuously, Defendant's Motion is accompanied by no affidavit or other record evidence refuting or even addressing ERC's claims regarding the existence of a policy or pattern and practice of discriminatory conduct by Woodner after April 25, 2005, the end of the revocation period.  All that Woodner offers here are naked denials by its counsel.  Such denials alone provide no evidentiary basis for a Rule 56 motion.  ERC has alleged an ongoing practice of discrimination and it is more than a fair inference that the practice, which had been ongoing for at least three years, continued, at the very least, for another 17 days, until April 25, 2005.  In fact, a fair inference from the unrebutted allegations in the Complaint is that the practice continued at least until the time the Defendant received notice from ERC that litigation was about to commence.  Thus, at this stage of the proceedings and for purposes of this Motion, ERC's allegations of a continuing pattern and practice of discrimination continue to be taken as true and Woodner has simply not met its burden of demonstrating that ERC's action is devoid of merit on any legal theory.

Finally, discovery in this case opened in late May and because of the Defendant's various motions, neither side has commenced discovery.[2]  There is, thus, no other "record" supporting Defendant's arguments.  At most, Defendant's denial of Plaintiff's claims at this early stage does nothing more than clarify the need for targeted discovery

---

[2] On April 29, 2008, Defendant filed a Motion to Amend the Court's April 17, 2008 Opinion, in an attempt to certify the preemption issue to the Court of Appeals and to stay proceedings.  Plaintiffs filed an Opposition to this motion on May 12, 2008, and the Court issued an opinion denying Defendant's motion on June 2, 2008.  On June 2, 2008, Defendant filed its Motion for Summary Judgment.  The parties each filed Rule 26(a)(1) Statements on June 13, 2008.  On June 20, 2008, the Court issued its scheduling order regarding fact and expert discovery and deadlines for scheduling summary judgment motions.

on the crucial issue of post-reinstatement discriminatory conduct by Woodner under Fed.

R. Civ. P. 56 (f).  *See* ERC's Rule 56(f) Motion, filed simultaneously herewith.

## **Factual Background**

As this Court has already noted, the District of Columbia Human Rights Act

("DCHRA") prohibits landlords from discriminating on the basis of a voucher holder's

status as a voucher holder. *See* 4/17/08 Op. at 14; District of Columbia Human Rights

Act, D.C. Code §§ 2-1401.01, *et seq*.  In clear violation of this law, Woodner maintains a

policy and practice of refusing to accept housing choice vouchers as a means of paying

rent for certain of its qualifying units at the Woodner Apartment Complex located at

3636-3540 16th Street, NW, in Washington D.C.  Plaintiffs have encountered this

discriminatory conduct firsthand.  Complaint at ¶¶ 17-22.

In 2002 and again on multiple occasions in 2005 including on April 5, 2005, ERC

utilized testers posing as housing applicants with housing choice vouchers who contacted

Woodner seeking to rent apartments, only to be turned away by representatives of

Woodner and advised that such vouchers were not accepted by Woodner.  Complaint at

¶¶ 18-21.  Meanwhile, on April 8, 2008, Plaintiff Sarah Bourbeau contacted Woodner

seeking to use a housing choice voucher to rent an apartment.  Despite having apartments

available for rent at prices that fell within the voucher payment standards, an agent of

Woodner advised her that Woodner would not accept her voucher as payment.

Complaint at ¶ 22.  The tests and Ms. Bourbeau's experience uncovered a consistent

pattern of source of income discrimination by managers of Woodner who refused to

accept housing choice vouchers in direct violation of the DCHRA.  *See* Complaint at

¶¶ 18-22.

On January 23, 2007, Ms. Bourbeau and ERC filed the instant Complaint against Woodner alleging a policy and practice of source of income discrimination shown by the aforementioned contacts that occurred while ERC's corporate status had been revoked. Complaint at ¶¶18-22.  Plaintiffs also alleged that the pattern and practice demonstrated that Woodner maintained a discriminatory policy as to voucher holders.  Complaint at ¶31.  Furthermore, Plaintiffs asserted that Woodner's actions, policy, and practice "constitute an ongoing, continuing pattern or practice of discrimination." *Id*.  While in its April 17 Opinion, this Court barred damages based on ERC's revocation period claims, ERC's post-reinstatement claims survived in their entirety.  4/17/08 Op. at 11.

**Argument**

**I.    Summary Judgment Standard**

Summary judgment shall not be granted unless all the papers submitted show there is no triable issue of material fact and that the moving party is entitled to a judgment as a matter of law.  *Hall v. National Railroad Passenger Corporation*, No. 03-1764, 2008 WL 2437042 *6 (D.D.C. 2008) ("Summary judgment may be granted only if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law [. . . ]  In other words, the moving party must satisfy two requirements: first, demonstrate that there is no 'genuine' factual dispute and, second, that is there is it is 'material' to the case").  A defendant is entitled to summary judgment only if the record establishes that none of the plaintiff's asserted causes of action can prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

("The relevant inquiry is the threshold inquiry of determining whether there is a need for trial - whether, in other words, there are genuine factual issues that can be resolved only by a finder of fact because they may reasonably be resolved in favor or either party.").

A defendant moving for summary judgment must conclusively negate a necessary element of the plaintiff's case and show that there is no material issue of fact that requires a trial. *See Macpherson v. Searle & Co.* 775 F. Supp 417, 420-421 (D.D.C. 1991). The moving party may satisfy Rule 56's burden of production first, by submitting affirmative evidence that negates an essential element of the nonmoving party's claim or second, by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim, and pointing out that a movant taking the second course must "affirmatively show" the absence of evidence in the record by, for example, deposing the opposing party's witnesses or establishing the inadequacy of documentary evidence. *Id.*

And of critical importance in this case, "on a motion for summary judgment *the inferences to be drawn from the factual material before the court must be viewed in the light most favorable to the party opposing the motion.*" *Bloomgarden v. Coyer, 156 U.S. App. D.C. 109, 479 F.2d 201, 208 (D.C. Cir. 1971)* at 208 (emphasis added); *Matsushita Elec. Indus. Co. v. Senith Radio Corp.*, 475 U.S. 574, 587 (1985) ("[A]ll inferences to be drawn. . . must be viewed in the light most favorable to the party opposing the motion.").

A moving defendant has the burden of introducing evidence that the plaintiff's action is without merit on any legal theory**,** and *only* once the defendant has met that burden, does the burden shift to the plaintiff to show that a triable issue of material fact exists. *See Fleischhaker v. Adams*, 481 F. Supp. 285, 286 (D.D.C. 1979) ("On a defense

motion for summary judgment, movant must come forward with a proffer rebutting each particular allegation of the complaint, and if the movant does so, the burden shifts to the other party to proffer evidence countering that of the movant and raising a material dispute as to some issue of fact."). Thus, if a defendant fails to meet that burden, the plaintiff has *no* burden to demonstrate the validity of the claim, and the court must deny the motion.

## II. Defendant Has Not Met Its Burden of Establishing the Non-Existence of a Genuine Issue for Trial.

While it is true in some circumstances that a party moving for summary judgment need not provide supporting affidavits, it is also true that a movant must provide some factual support for its motion in order to establish that no triable issue remains in the case. As the Supreme Court stated in *Celotex Corp. v. Catrett*, 106 S. Ct. 2548 (1986):

> A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 2553. Woodner's Motion, however, ignores this requirement and is based entirely on a discussion of the sufficiency of Plaintiffs' Complaint. Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Def. Mem.") at 4-8. Astonishingly, despite repeated claims by counsel for Woodner [3] that Woodner has not discriminated and has no policy to discriminate against voucher holders, Defendant has chosen to not substantiate its counsel's bald assertions with affidavits or other

---

[3] At the April 22, 2008 status conference, defense counsel advised the Court that his "client has always taken Section Eight, and they have never denied people because they had taken Section Eight." Hrg. Tr. at 3 (attached hereto as Exhibit A). Similarly, in its Motion to Dismiss, filed February 16, 2007, counsel for Woodner wrote that "[f]or the record, Defendant denies these charges because it has always accepted Section 8 voucher holders as tenants[]". *See also* Defendant's Motion to Dismiss at 2.

documentary evidence.  Indeed one could well conclude from this glaring omission that such evidence has not been produced because it does not exist.  Moreover, since there has been *no* discovery to date, Defendant can also point to no admission, document, interrogatory response, or other evidence provided by ERC to establish that ERC has no legal theory upon which it can prevail.

The only "evidence" Woodner relies on is its mischaracterization of a representation by ERC's counsel at the April 22, 2008 status conference before this Court.  Specifically, Woodner contends that at the hearing, ERC stated that it could produce no evidence of discrimination after April 25, 2005, the date ERC's corporate charter was reinstated.  Def. Mem. at 4.  However, aside from the fact that representations by counsel do not constitute record evidence,[4]  in fact ERC's counsel did not concede that ERC can provide no proof of discrimination after the reinstatement of its corporate charter.  Instead, counsel explained that ERC did not have evidence of specific and discrete occurrences wherein Woodner discriminated against housing choice voucher holders after April 25, 2005.  However, the factual allegations in the Complaint establish a discriminatory pattern and practice in place as late as April 8, 2005, and give rise to a strong inference that the pattern and practice continued through April 25, 2005 and beyond.  Defendant has presented no evidence to refute the allegations or this inference, and in particular, no evidence that this ongoing practice miraculously stopped during the precise 17 days between the last observed illegal discriminatory act and the reinstatement of ERC's charter.

---

[4] *See Lytes v. District of Columbia Water and Sever Authority*, 527 F. Supp. 2d 52, 62 (D.D.C. 2007) ("[a]rgument of counsel does not constitute evidence.")

Moreover, there are a multitude of ways to establish discriminatory conduct beyond tests and the like, including but not limited to developing evidence of Woodner's policy or practices with respect to voucher holders, how property managers are trained to process voucher holder applications and to what extent Woodner imposes an impermissible limit on the number of voucher holders it will accept. Since, as Plaintiff's counsel pointed out at the hearing, discovery had not yet commenced, ERC had not yet had an opportunity to develop such evidence. Hrg. Tr. (Ex. A) at 8.

Thus, without a single supporting record fact, Woodner's summary judgment motion amounts to little more than a thinly veiled and impermissible motion for reconsideration of the Court's April 17, 2008 Order. As to the sufficiency of ERC's post-reinstatement claims, this Court clearly ruled that "ERC has pled facts sufficient to establish its standing to sue with respect to events and injuries that occurred after its reinstatement, but not before." 4/17/08 Op. at 8. Accordingly, Woodner's reliance on *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), which discusses the standard applicable to motions to dismiss and *not* summary judgment, is misplaced. The Supreme Court in *Twombly* reasoned that the "potentially enormous expense of discovery" must be avoided where there is no plausible entitlement to relief and no "reasonably founded hope that the [discovery] process will reveal relevant evidence." *Id.* at 1967 (citations omitted). This Court has already found to the contrary. *See* 4/17/08 Op. at 8.

Even applying *Twombly's* so-called "plausibility" standard at the summary judgment stage provides scant aid to Defendant's argument as ERC's post-reinstatement claims would easily survive here as well. The series of discriminatory events which took place between 2002 and 2005, up to and including Sarah Bourbeau's experience on April

8

8, 2005 would show, if proved at trial, the existence of a policy or pattern and practice of discrimination by Woodner during the period in which ERC's corporate charter had been revoked. Under these circumstances, it would be more than reasonable for a jury to infer that Woodner's discriminatory conduct would have continued at least another two and half weeks to the point at which ERC's charter was reinstated and, indeed, beyond. *See, e.g., Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 364 (D. Md. 2004) (evidence that a pattern and practice of discrimination existed in 1999 generated a reasonable inference that the discrimination continued in 2001). This inference would indeed be compelling if at trial, Defendant presented *no* contrary evidence. Yet that is precisely the circumstances presented by the motion *sub judice*.

Contrarily, under Defendant's theory, no amount of evidence of discriminatory conduct immediately preceding ERC's reinstatement would be enough to permit an inference that Woodner maintained a discriminatory policy with respect to voucher holders and that its discriminatory conduct continued into the reinstatement period. One hundred incriminating tests would not suffice so long as the last test was conducted on April 24, 2005. This is clearly not the law:

> The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue as to any material fact, and even when his opponent comes forth with nothing, summary judgment must be denied if the facts supporting the motion do not establish the nonexistence of such an issue. Likewise, summary judgment must be denied if the movant fails to show his entitlement to a favorable determination as a matter of law. Thus, to be upheld, the summary judgment under review must withstand scrutiny on both its factual and legal foundations.

*Bloomgarden v. Coyer, 479 F.2d at 208.*

In its motion, Woodner offers no evidence to nullify or even counter ERC's assertion that Woodner engaged in a pattern and practice of discrimination after April 25, 2005 – not even so much as an affidavit stating that it never turned away voucher holders or that during the applicable period, it consistently approved the applications of such tenants.  Thus, Woodner has not demonstrated in any way the absence of a genuine issue of material fact.  As such, Woodner has not met its burden to produce evidence that ERC's post-reinstatement claims lack merit on any legal theory, and therefore the burden has not shifted to ERC to demonstrate the validity of its post-reinstatement claims.  Accordingly, the Defendant's motion must be denied.

**II.    ERC has presented a genuine issue for trial.**

Not only are ERC's allegations sufficient to withstand scrutiny at what is in effect the pleading stage of the case, they are sufficient to prevail at trial even if no additional evidence of discrimination is found during discovery.  This is so because the evidence reflected in the Complaint raises a genuine issue for trial, *i.e.*, whether Woodner's proven three-year pattern and practice of discrimination against voucher holders – as alleged in the Complaint, presumed true for purposes of this motion and not contested by an affidavit from Defendant – in fact continued past April 25, 2005.  ERC's testing evidence coupled with Sarah Bourbeau's experience is plainly sufficient to establish that Woodner engaged in such a pattern and practice of discrimination from at least 2002 through April 8, 2005 and, as stated above, a reasonable juror could infer that it continued into the reinstatement period, which began on April 25, 2005.  Indeed, even had Woodner come forth with evidence tending to show that it had stopped its practice of discriminating against voucher holders between April 8 and April 25, 2005, a triable issue of fact as to

whether this change in fact occurred and was effective would still exist requiring a jury trial.

Finally, while this Court's April 17 Opinion made clear that ERC could not use these pre-reinstatement events to establish a damage claim for alleged injuries suffered during that period, the events are certainly relevant to the larger issue of whether Woodner actually discontinued its policy and practice of discriminating against voucher holders prior to April 25, 2005.  In other words, the Court's ruling did not cause the pre-reinstatement events to cease to exist as an evidentiary matter.[5]  Thus, Woodner cannot use the revocation period as a shield to deny the existence of its own discriminatory conduct.

### III.    Defendant's Motion is Premature At Best.

As noted above, there has been no discovery taken yet in this case.  Thus, even if the Court were to determine here that a jury could not reasonably infer from the pattern and practice evidence alleged in the Complaint that such conduct continued past April 25th ERC would be entitled to discovery designed to examine, among other things, the specifics of Woodner's practices relevant to voucher holders during the reinstatement period, and whether and to what extent Woodner had an express or implied policy of declining voucher holders or limiting their acceptance by self-imposed quotas.[6]  "A party opposing summary judgment needs a 'reasonable opportunity' to complete discovery before responding to a summary judgment motion and that 'insufficient time or

---

[5] Judge Weisberg of the D.C. Superior Court has, in two similar cases, examined ERC's loss of its corporate charter, and while he too has ruled that damages cannot obtain based on revocation period claims, he expressly declined to rule on the admissibility of evidence gathered during the revocation period as proof of any claims that survive summary judgment. *See Equal Rights Ctr. v. Phifer Realty Inc.*, No. Civ. 05-7190, slip opin., at *3 n.2 (D.C. Sup. Ct., Dec. 21, 2005); *Equal Rights Ctr. v. Horning Bros.*, No. Civ. 05-7197, slip opin., at *3 n.2 (D.C. Sup. Ct., Dec. 21, 2005).

[6] *See* Affidavit of Thomas A. Reed accompanying Rule 56(f) Motion For Specific Discovery filed simultaneously herewith.

opportunity to engage in discovery' is cause to defer decision on the motion." *Elliott v. Federal Bureau of Prisons*, 2006 WL 3826930, 4 (D.D.C. 2006) (citations omitted).

Moreover, Woodner cannot in good faith claim that it would be unfairly prejudiced by the requested discovery. Virtually all of the discovery that ERC will seek will be identical to that which Sarah Bourbeau will request,[7] so Woodner's discovery costs would change only marginally if at all. Indeed, it is likely that Woodner's discovery costs will increase only to the extent that it conducts its own discovery of ERC. In this regard, ERC would be willing to entertain an agreement to extend the discovery period so that Woodner can conduct its discovery of ERC after the Court has ruled on the motion and avoid the additional cost should the motion prove successful.

## Conclusion

On summary judgment, the moving party must show either by affidavit or other appropriate record evidence means that a triable issue does not exist as to an essential element of the non-movant's case. Woodner's premature summary judgment motion does not come close to satisfying this burden. For this reason, Woodner's motion should be denied. Alternatively, as the accompanying motion and affidavit show, ERC is at least entitled to take discovery to support its post-reinstatement claims.

---

[7] Since Ms. Bourbeau's claims are not the subject of this motion, her claims will continue at least through discovery.

Respectfully Submitted,


/s/ Thomas A. Reed
Thomas A. Reed (#435258)
K&L Gates LLP
1601 K Street, N.W.
Washington, D.C. 20006
Tel: 202-661-3713/ Fax: 202-778-9100

Robert M. Bruskin (#164293)
Isabelle M. Thabault (#318931)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Tel: 202-319-1000/ Fax: 202-319-1010

*Counsel for Plaintiffs Sarah Bourbeau and
the Equal Rights Center*


Dated: July 11, 2008

**CERTIFICATE OF SERVICE**

I certify that on the 11th day of July, 2008, copies of the foregoing Response to

Defendant's Statement of Material Facts Not In Dispute and Memorandum of Points and

Authorities in Opposition to Defendant's Motion for Summary Judgment were filed via

the electronic case filing system of the United States District Court for the District of

Columbia and, accordingly, that the Court will send notice of this filing electronically to:

Roger D. Luchs, Esq.
Greenstein DeLorme & Luchs, P.C.
1620 L Street NW, Suite 900
Washington, D.C. 20036-5606
rdl@gdlaw.com


/s/ Thomas A. Reed_____
Thomas A. Reed (D.C. Bar # 435258)

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SARAH BOURBEAU, et. al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No: 1:07CV00164 |
| v. | ) Judge: Paul L. Friedman |
| | ) |
| | ) |
| THE JONATHAN WOODNER CO., | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**PLAINTIFF EQUAL RIGHTS CENTER'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to LCvR 56.1, Plaintiff, Equal Rights Center (hereafter, "ERC"), hereby submits its response to Defendant's Statement of Material Facts Not In Dispute and asserts its statements of fact as which there exists a genuine issue of material fact for trial. Accordingly, ERC responds as follows:

1. Admitted.

2. Admitted.

3. Denied to the extent that it implies that conduct occurring before April 25, 2007 is not relevant evidence of source of income discrimination by Woodner after April 25, 2005.  Therefore, a genuine issue exists as to whether Woodner discontinued its pattern and practice of discrimination against Section 8 voucher holders prior to April 25, 2005.

4. Denied to the extent that it implies that Plaintiffs did not allege discriminatory conduct by Woodner after April 25, 2005. Therefore, a genuine issue exists as to whether Woodner engaged in discriminatory conduct after April 25, 2005.

5. Denied. ERC admitted that, without engaging in discovery it had no evidence of specific discriminatory events after April 25, 2005. However, ERC did not admit that it had no post-April 25, 2005 evidence of discrimination by Woodner. See Transcript of April 22, 2008. ERC does have such evidence. Therefore, a genuine issue exists as to whether Woodner engaged in discriminatory conduct after April 25, 2005.

Respectfully Submitted,

/s/ Thomas A. Reed_____
Thomas A. Reed (#435258)
K&L Gates, LLP
1601 K Street, N.W.
Washington, D.C. 20006
Tel: 202-661-3713/ Fax: 202-778-9100

Robert M. Bruskin (#164293)
Isabelle M. Thabault (#318931)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Tel: 202-319-1000/ Fax: 202-319-1010

*Counsel for Plaintiffs Sarah Bourbeau and Equal Rights Center*

Dated: July 11, 2008

**EXHIBIT A**


**Transcript Of April 22, 2008 Hearing Before
The Honorable Paul L. Friedman**

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
 2
    SARAH BOURBEAU, et al,           . Docket No. CA-07-0164 (PLF)
 3                                   .
         Plaintiff,                  .
 4                                   . Washington, D.C.
              v.                     . April 22, 2008
 5                                   . 9:00 a.m.
    JONATHAN WOODNER COMPANY,        .
 6                                   .
         Defendant.                  .
 7     . . . . . . . . . . . . . . . .
```

```
 8                      TRANSCRIPT OF HEARING
               BEFORE THE HONORABLE PAUL L. FRIEDMAN
 9                  UNITED STATES DISTRICT JUDGE

10  APPEARANCES:
    For the Plaintiff:        Washington Lawyers' Committee
11                            For Civil Rights and Urban Affairs
                              By: Robert M. Bruskin, Esquire
12                            11 Dupont Circle, Northwest
                              Washington, D.C. 20036
13                            202.319.1000

14                            Kirkpatrick & Lokhart, Preston,
                              Gates, Ellis, LLP
15                            By:  Jenee Desmond-Harris, Esquire
                              Thomas A. Reed, Esquire
16                            1601 K Street, Northwest
                              Washington, D.C. 20006
17                            202.661.3753

18  For the Defendant:        Greenstein, DeLorme & Luchs, P.C.
                              By: William C. Casano, Esquire
19                                 Roger D. Luchs,  Esquire
                              1620 L Street, Northwest
20                            Washington, D.C. 20036
                              202.452.1400
21
    Court Reporter:           Linda L. Russo, RPR
22                            Official Court Reporter
                              Room 6403, U.S. Courthouse
23                            Washington, D.C. 20001
                              202.354.3244
24
    Proceedings reported by machine shorthand, transcript produced
25  by computer-aided transcription
```

Linda L. Russo, RPR
Official Court Reporter

<pre>
 1                    P R O C E E D I N G S
 2           THE CLERK:  Civil action 07-0164, Sarah Bourbeau, et
 3   al, versus Jonathan Woodner Company.  For the plaintiff,
 4   Mr. Bruskin, Mr. Reed and Ms. Harris.  For the defendant, Mr.
 5   Luchs and Mr. Casano.
 6           THE COURT:  Good morning, everybody.  Well, how do
 7   you want to proceed with what's left of the case?
 8           MR. REED:  Thomas Reed for the plaintiffs, Your
 9   Honor.  We view this morning, I take it, just to get some
10   scheduling direction from the Court.  We're anticipating an
11   answer from defendants, and we certainly are willing to work
12   with the defendant to come up with a discovery schedule that's
13   amenable to the Court and present that joint schedule to the
14   Court.
15           THE COURT:  Any way to resolve this case before we
16   start going down this road?
17           MR. REED:  We are certainly open.  We've had
18   discussions with defendant prior to filing the complaint.  We
19   had a number of discussions.  They didn't bear fruit, and then
20   we filed our complaint.  We haven't proceeded since then.  We
21   are certainly open to reopening discussions with the defendant,
22   but we have not had a conversation with them up to this time.
23           MR. LUCHS:  Good morning, Your Honor.  I'm Roger
24   Luchs.  A couple of things we'd like to address.  Part of the
25   problem with trying to settle a case like this, our client has
</pre>

3

1   always taken Section Eight, and they have never denied people

2   because they had Section Eight.  We put that into the pleading.

3   It wasn't pertinent to the motion to dismiss, so that's going

4   to be a difficulty right there.  So we don't really have facts

5   upon which we could even start a negotiation.

6          And as you've seen from the Superior Court cases, I

7   don't know if you've seen the jackets.

8          THE COURT:  No, I've seen the opinions from Judge --

9          MR. LUCHS:  But normally even in the most minor of

10  cases of discrimination, or alleged discrimination, the

11  starting point for the ERC has been very, very high, and we

12  have viewed it really kind of as a, shall we say a fund-raising

13  mechanism, and approached it in that way in discovery.

14          With that said, there are a couple of things we would

15  like to raise with the Court now, and the Court may or may not

16  wish to address them.  One is, we are planning to file a motion

17  to certify the issue of the Human Rights Act issue and the Home

18  Rule Act issue to the Court of Appeals.

19          THE COURT:  The D.C. Court of Appeals across the

20  street?

21          MR. LUCHS:  The U.S. Court of Appeals.

22          THE COURT:  I don't think they're going to be

23  particularly interested, so I doubt that I'll do that.

24          MR. LUCHS:   Well, our client has advised us it's

25  something they'd like to do.

4

1          THE COURT:  This is a question of local law.  I don't

2     think the D.C. Circuit is going to get all that interested in

3     it.

4          MR. LUCHS:  But the Home Rule Act is a Congressional

5     act, it's not local.

6          And, secondly, with respect to ERC itself, your order

7     says that they could proceed with any cause arising after April

8     25th.  And going back and looking at the complaint, you'll see

9     that the last alleged task was in 2005.  They have not posited

10    anything in their complaint which was filed in 2007 to suggest

11    there was a continuing course of discrimination.

12         And what we found in the Superior Court cases when

13    this exact same situation came up before Judge Ross as to where

14    the corporate charter issue had come up and the claims were

15    dismissed, he inquired of the ERC counsel, counsel that handled

16    the matter for him, what evidence do you have of anything

17    happening after the charter was reinstated, and the answer was,

18    we don't have any but we need discovery to find it out.

19         And I bring that up because, as you know, the Twombly

20    decision, which was decided several months after these

21    pleadings were filed, has made it quite clear and even

22    addressed that very point, you cannot come into court and say

23    we need discovery.  And I would suggest to the Court that ERC

24    does not have any evidence of anything happening after April

25    25th.

1          And the reason they put that type of allegation in

2  the complaint as they did in Superior Court is in an effort to

3  keep the suits alive given the problems with the corporate

4  charter issue, but when pushed they have not come up with

5  evidence of continuing violations except in a particular case

6  where our client, that being the E and G case, had acknowledged

7  from day one that they had stopped taking Section Eight because

8  they weren't getting paid by the District of Columbia.

9          So we would ask perhaps for a proffer, if they have

10  any such proof, as opposed to saying, well we need discovery in

11  order to find out if there's a continuing conduct.  And, again,

12  the last alleged act of discrimination they even referred to

13  occurred two years before they filed the complaint.

14          THE COURT:  I suppose the other way you could do it

15  is, you could file a motion for summary judgment saying what

16  you have just said and incorporating by reference the arguments

17  that -- saying you've already ruled on the legal issue, and so

18  we're entitled to judgment because there's nothing after April

19  25th.  And then under Rule 56 they would be required to come

20  forward with affidavits or to ask for discovery under 56(f),

21  then I could either grant or deny the request for discovery.

22  And if they didn't have any affidavits, they'd be out of luck.

23          MR. LUCHS:  That's a method.  The concern, of course,

24  is that in all those cases when discovery was permitted, it

25  went on and on.

1          THE COURT:  But 56(f) discovery could be limited to

2     just that issue, or we could just agree on that now that they

3     would get limited discovery to try to show that anything

4     happened after April 25th.

5          MR. LUCHS:  Excuse me for one moment.

6          (There was a pause in the proceedings.)

7          MR. LUCHS:  Mr. Casano is saying that Rule 26(f),

8     they have to demonstrate some basis that would allow them to

9     even go with discovery.  And I think Twombly says the same

10    thing.

11         THE COURT:  It has to be plausible.

12         MR. LUCHS:  Again, if they've got some information,

13    even plausible information, if it's hearsay or something, it

14    should be easy enough to say they have that, and that should be

15    sufficient.

16         Thank you, Your Honor.

17         THE COURT:  Would you like to respond to that?

18         MR. REED:  Sure, Your Honor.  There are two aspects

19    to this case.  Obviously, there's the Sarah Bourbeau's case as

20    well, which is not dependent on these issues and should go

21    forward.

22         THE COURT:  Are you representing both plaintiffs?

23         MR. REED:  We are representing both plaintiffs.  With

24    respect to defendant's suggestion regarding a proffer, I

25    believe I agree with Your Honor's suggestions.  I think to the

1    extent that if they want to file a motion for summary judgment

2    and follow that procedure, we're prepared to respond.  We also

3    believe that we can prove continuing violations, and request

4    the opportunity --

5              THE COURT:  Are you using continuing violations in

6    the technical sense that some of the discrimination cases are

7    using it, or are you using it to mean that there were discrete

8    acts that took place after April 25, 2005?

9              MR. REED:  Well, discrete acts, including in that

10   context the issue being one of liability and not of damages.

11             THE COURT:  Being what?

12             MR. REED:  The issue being --

13             THE COURT:  What's the event?  What happened after

14   April 25, 2005?

15             MR. REED:  That I think would have to be borne out in

16   discovery.  There would be discrete acts in terms of turning

17   individuals away and discriminating against them based on

18   source of income.

19             THE COURT:  So you don't have any evidence at the

20   moment?

21             MR. REED:  We have -- hold on.  Let me confer with my

22   colleague.

23                  (There was a pause in the proceedings.)

24             MR. REED:  Your Honor, after conferring with my

25   colleague, we do have evidence of multiple tasks occurring

1    prior to April 25th.  Now, to the extent that they can't be

2    used for damages purpose, we understand that, we understand

3    Your Honor's ruling with respect to that.

4            However, they do show pattern and practice prior to

5    April 25th, and we believe we're entitled to an inference that

6    that conduct has continued beyond that with respect to the

7    liability issue.  And discovery will bear that out past that

8    point.

9            THE COURT:  Why should they be put to discovery if

10   you don't have any discrete acts that occurred after April

11   25th?  Do you have any discrete acts relating to negligence

12   supervision after April 25th?

13           MR. REED:  That we don't have.  We believe what we do

14   have is a pattern and practice, and we would need discovery to

15   bear that out, Your Honor.

16           THE COURT:  Well, you all can sit down and try to

17   reach a schedule on discovery, but I'm not sure you'll be able

18   to.  And the defendants can move for summary judgment any time

19   they want to.

20           MR. REED:  Thank you, Your Honor.

21           THE COURT:  So defendants can move for summary

22   judgment any time they want to.  And I assume it's going to be

23   just against ERC.

24           MR. LUCHS:  That's correct, Your Honor.

25           THE COURT:  So defendants can move for summary

Linda L. Russo, RPR
Official Court Reporter

1  judgment against ERC any time they want to.  ERC will have to

2  respond within 30 days if that's what the rules say, which I

3  think it is, or file a 56(f) motion within 30 days.  And you

4  should sit down and try to work out a discovery schedule in

5  general.  I expect that you'll be able to agree on a discovery

6  schedule with respect to Ms. Bourbeau.  I'm not sure you'll be

7  able to agree on a discovery schedule with respect to ERC if

8  the defendant chooses to file a summary judgment motion.

9        On the other hand, it doesn't make a whole lot of

10  sense to have these on two totally separate tracks, so maybe

11  you could at least agree on document production and

12  Interrogatories with respect to both plaintiffs and the

13  defendant, even if you can't agree on depositions with respect

14  to ERC until after the Rule 56 motion is dealt with.

15        You also ought to talk about whether or not you want

16  to go to a mediator or Magistrate Judge to see if this can be

17  resolved in some fashion.

18        I don't know what else to suggest.  I suppose the

19  other thing that plaintiffs could do is if they had additional

20  evidence at their fingertips or a slightly different theory

21  after my opinion they could move to amend their complaint, the

22  defendant might oppose it, but they could, to avoid the problem

23  we've been talking about.

24        And then of course defendant says they're going to

25  move for certification to the Court of Appeals.  And we'll see

10

1   whether they do and what the plaintiffs' response is.

2           Some of these things should go on simultaneously, and

3   maybe others shouldn't go on simultaneously.  I don't know

4   whether you're going to be able to agree on that, but since

5   you're not in agreement today about how to proceed, and you're

6   not in agreement, which I was hoping you would be, to go

7   directly to a mediator or Magistrate Judge to discuss

8   settlement before we go down the discovery road, I suppose the

9   next best thing is to ask you to go sit down and try to talk to

10  each other and see if you can come up with a schedule, and file

11  in effect a Rule 16.3 joint report setting out those things as

12  to which you agree and those things as to which you disagree.

13          If defendant is firm in wanting to file a

14  certification motion and/or a Rule 56 motion, maybe you can

15  agree on dates for the briefing of those, even if you don't

16  like the fact that they're going to do it, and build in

17  plaintiff's right either to oppose the 56 motion or to file a

18  56(f) request for discovery.  And under 56(f), of course, the

19  request for discovery should be focused on that which you need

20  to oppose the summary judgment motion as opposed to broad

21  open-ended discovery.

22          You could consider, because it costs both sides I

23  assume money to litigate, you could consider postponing broader

24  discovery until after I rule on the 56 motion, if there's going

25  to be one, until after I rule on the motion to certify, if

1    there's going to be one.  You could consider limiting

2    yourselves to paper discovery for now, or, and I don't know

3    enough about the facts to know, if the discovery Ms. Bourbeau

4    needs is much more limited than the discovery ERC needs, you

5    could go forward with depositions on Ms. Bourbeau's behalf.

6    But I suspect that she probably needs to depose the same people

7    from Woodner that ERC would want to depose, too.

8          And so the question that you have to talk about when

9    you talk about discovery is how defendant feels about bringing

10    people in twice.  So, for example, if there were to be

11    depositions with respect to Bourbeau, we would at least be

12    limited to a discrete event and discrete days or weeks.

13          If, on the other hand, ERC is still in the case, it

14    wouldn't be so limited, although arguably it would be limited

15    to events after April 25, 2005, except that counsel for

16    plaintiff says we need to go back before then in order to show

17    a pattern and practice.  So I don't know whether you're going

18    to be able to agree on how to structure discovery.

19          MR. LUCHS:   Mr. Reed and I have had very pleasant

20    conversations.  We haven't agreed with anything, but we get

21    along fine, so it shouldn't be an issue.

22          THE COURT:  Well, let me put it this way.  It seems

23    like there are enough layers to this that you're better

24    positioned to try to reach agreements and/or to clearly

25    identify your points of disagreements and how you propose I

1   deal with it than I am to sit here and try to sort it out

2   without having more input from you after you've talked to each

3   other.

4          That having been said, and I do think that if there's

5   any realistic possibility of settling the matter, I don't know

6   whether there's any prospect of settling the matter with Ms.

7   Bourbeau and litigating what's left of ERC's case separately,

8   but that's also something else that one could consider.

9   Counsel for plaintiff obviously has two different clients, and

10  they have to look out for the respective interests of each.

11         But why don't we just agree on a date certain when

12  you're going to file something jointly under Rule 16.3, and

13  after I see where you are in agreement and where you are in

14  disagreement, I will issue a scheduling order.

15         So how much time did you think you need to talk to

16  each other and try your best to sort the case out procedurally?

17         MR. REED:  We recommend 30 days.

18         MR. LUCHS:  That's fine.

19         THE COURT:  So today is the 22nd, so why don't we say

20  by Friday, May 23rd, you'll file something.  If you sit down

21  and get to the end of the discussions and have your agreements

22  and your highlighted disagreements earlier, you can file

23  something earlier and then I can put a schedule in place

24  earlier.

25         And from defendant's point of view, I suppose that

1   they still could file their certification motion or their
2   summary judgment motion at any time.  But if they choose to do
3   that before the expiration of the 30 days, I think you should
4   still talk about and include -- let's not have gamesmanship
5   where you run off and file it tomorrow so they have to file it
6   before you even sit down and have your meeting.  I don't expect
7   that, but if you want to file, if you have it clear in your
8   minds, you can file.  But then when you sit down, you can build
9   in whatever time plaintiffs think they need.
10           MR. LUCHS:  Even in Superior Court we never had a
11   problem with agreeing to dates.
12           THE COURT:  All right.  Well, good luck.  Thank you.
13       (Proceedings concluded.)
14
15                          CERTIFICATE
16       I, LINDA L. RUSSO, Official Court Reporter, certify
17   that the foregoing pages are a correct transcript from the
18   record of proceedings in the above-entitled matter.
19
20
21                          _____
                            Linda L. Russo, RPR
22                          Virginia CCR No: 0313102
23
24
25