UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARAH BOURBEAU, *et al.*,

     *Plaintiffs*,

v.

THE JONATHAN WOODNER CO.,

     *Defendant*.

Case No. 1:07CV00164 (PLF)
Judge: Paul L. Friedman

## DEFENDANTS' OPPOSITION TO PLAINTIFF EQUAL RIGHTS CENTER'S RULE 56 (f) MOTION FOR SPECIFIC DISCOVERY

Defendant The Jonathan Woodner Co. ("Woodner"), by its undersigned counsel, hereby submits the following Opposition to Plaintiff Equal Rights Center's ("ERC") Rule 56 (f) Motion for Specific Discovery.

## FACTS

On January 23, 2007, Plaintiffs Sarah Bourbeau and Equal Rights Center ("ERC") filed their Complaint, alleging that Woodner engaged in "source of income" discrimination under the District of Columbia Human Rights Act, D.C. Code § 2-1402-21, through its alleged practice of refusing to accept housing choice vouchers as payment for rent of its apartments.[1] In this regard, the Complaint alleged a series of discriminatory acts which allegedly took place on January 29, 2002 (outside the statute of limitations), March 21, 2005, April 5, 2005, and April 8, 2005. As to

---

[1] The Complaint also contained a claim that Defendant negligently supervised its employees with respect to the actions which Plaintiffs alleged constituted discrimination.

period of time from April 25, 2005 and through January 23, 2007, no specific acts of discrimination were identified or described.  Rather, Woodner is charged with a "continuing pattern or practice of discrimination," ostensibly based on the specific tests that allegedly occurred through April 8, 2005.  _See, e.g._, Complaint at para. 31.

On September 9, 2002, ERC's Articles of Incorporation were revoked by the Superintendent of Corporations of the District of Columbia.  In response to a Motion to Dismiss filed by a defendant in a suit brought by ERC in the Superior Court which motion raised that incapacity, ERC had its articles reinstated, on April 25, 2005.  Under applicable law, evidenced by Superior Court decisions adverse to ERC, ERC ceased to exist on September 9, 2002, by virtue of the revocation of its articles and any actions taken thereafter were a nullity.  Similarly, this Court held in its Order of March 31, 2008 and its Opinion of April 17, 2008 that:  "Because ERC cannot establish standing retroactively as a corporation with respect to claims based on events and injuries that occurred during the revocation period, the Court will grant Woodner's motion to dismiss with respect to all of ERC's claims based on events and injuries that occurred prior to April 25, 2005."  Opinion at p. 11.  Thus, to the extent ERC has any claim remaining in this action, it must proffer some event that occurred, or test it conducted, on or after April 25, 2005, that evidences Woodner's discrimination against Section 8 voucher holders.

Although ERC did not plead any such events or tests, and apparently conducted no testing of the Woodner between April 25, 2005 and January 23, 2007, the Court, nevertheless, did not dismiss ERC's claims for injuries after April 25, 2005.  The Court commented that Woodner had not argued that ERC failed to plead facts sufficient to withstand a motion to dismiss with respect to those injuries.  See Opinion at p. 11.

At a status conference conducted shortly after the Opinion was issued, upon inquiry by undersigned counsel and the Court, ERC admitted on the record that it had no evidence of any post-April 25, 2005 discriminatory conduct by Woodner.  See Exhibit C, Transcript at p. 8. Consistent with that admission, in its recently filed opposition to Woodner's  Motion for Summary Judgment, ERC offers no evidence whatsoever of any post-April 25, 2005 discriminatory conduct.  Rather, it asks this Court to allow it to go on a quest, in effect a "fishing expedition," to see if it might be able to adduce such evidence.  Hence, the instant motion under Rule 56(f).  In 2007, this approach to litigation was firmly condemned by the United States Supreme Court, as is discussed below.[2]

## ARGUMENT

### RULE 56 DOES NOT PREVENT THIS COURT FROM ENTERING SUMMARY JUDGMENT AND THIS COURT SHOULD EXERCISE ITS DISCRETION TO THWART ERC'S UNWARRANTED FISHING EXPEDITION

Since it is unable to present even a scintilla of evidence that Woodner engaged in discrimination between April 25, 2005 and January 23, 2007 (the date on which the complaint was filed), ERC moves this Court to delay disposition of Defendant's summary judgment motion until such time as ERC may complete discovery.  It relies on Rule 56(f) in support of its motion. In its affidavit accompanying its motion, ERC states what discovery it expects to undertake and that it believes such discovery would provide evidence of discrimination.  ERC does not explain why it believes its efforts would be fruitful, which seems rather fanciful given that it failed to

---

[2]    Indeed, upon learning the ERC had no evidence of post-April 25, 2005 conduct by Woodner, this Court noted that "defendants can move for summary judgment any time they want to."  Transcript, Exhibit C at p. 8.

develop any such evidence in the 21 months between April 25, 2005 and the date the Complaint was filed, even though as a result of Superior Court litigation in other cases, ERC knew that revocation of its corporate charter was fatal to pre-April 25, 2005 claims.[3]  As is evidenced in its Complaint, and in its Complaints filed in the Superior Court, each of which was identified in Woodner's Motion to Dismiss, ERC has a long history of testing landlords, to ascertain whether they are engaging in unlawful discrimination against prospective tenants.  Given its experience in this area, it could easily have tested the Woodner between April 25, 2005, *i.e.*, just two weeks after Ms. Bourbeau's claims to have been discriminated against, and January 23, 2007 and ascertained any discrimination.

Even if one were to excuse that failure, ERC was certainly provided with every incentive to conduct discovery when on March 31, 2008, ERC's pre-April 25, 2005 claims were dealt a blow by this Court which also, on April 22, 2008, made it clear that the lack of post reinstatement evidence of discrimination exposed ERC to a motion for summary judgment. ERC, however, attempts to convince this Court that it was too busy for this crucial task because it spent the bulk of its time responding to Woodner's motions to amend the April 17, 2008 Opinion and for summary judgment.  ERC's request that this Court delay or deny the Defendant's motion should be flatly rejected and recognized for the fishing expedition that it is. ERC should not be allowed to make bold accusations, unsupported by any facts, to simply run up

---

[3]     See, *e.g.*, December 21, 2005 Order of Judge Frederick H. Weisberg in *Equal Rights Center v. Phifer Realty, Inc., et al., Superior Court of the District of Columbia, Civil Action No. 05-7190*, attached as Exhibit A to Defendant's Motion to Dismiss Complaint for Failure to State a Claim for Which Relief May Be Granted filed in the instant case.

Woodner's attorneys fees, and staff time devoted to respond to its discovery, to try to wring out a settlement.

There is no blanket prohibition on granting summary judgment before discovery. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1396 (5th Cir. 1994); *United States ex rel. Small Business Admin. v. Light*, 766 F.2d 394, 397-98 (8th Cir. 1985). And while under Rule 56(f) this Court may deny the motion or order a continuance to permit discovery to be taken to allow the non-movant to obtain information necessary for affidavits opposing the motion, entitlement to discovery is hardly automatic. The party must demonstrate precisely how additional discovery will lead to a genuine issue of material fact and specify, *inter alia*, what particular information is sought, how, if uncovered, it would preclude summary judgment, and why it has not been previously obtained. *Travelers Indemnity Co. of Illinois v. United Food & Commercial Workers*, 770 A.2d 978, 994 (D.C. 2001).[4] Vague or conclusory allegations that discovery would develop a material issue of fact are insufficient. *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004); *United States v. Bob Stofer Oldsmobile-Cadillac*, 766 F.2d 1147, 1152-53 (7th Cir. 1985). Moreover, discovery may be denied where it is not justified in light of undisputed evidentiary facts already before the court. *Cable Electric Products, Inc. v. Genmark, Inc.*, 586 F.Supp. 1505, 1512 (N.D. Cal. 1984), *aff'd in part and vacated in part on other grounds*, 770 F.2d 1015 (Fed. Cir. 1985). Finally, courts will not permit Rule 56(f) to be used as an excuse to engage in a fishing expedition. *Paul Kadair, Inc. v.*

---

[4]     See also *Burlington Coat Factory Warehouse Corp. v. Espirit de Corp.*, 769 F.2d 919 (2d Cir. 1985) (Discovery will be denied where the party is unable to state with specificity how further discovery would produce relevant information.).

_Sony Corp. of America_, 694 F.2d 1017, 1030 (5th Cir. 1983) (Judge may exercise his discretion to prevent plaintiff from burdening defendants with a needless round of discovery on frivolous claims.); _Krim v. BancTexas Group_, 989 F.2d 1435, 1442 (5th Cir. 1993); _Addison v. Allstate Ins. Co._, 97 F.Supp. 2d 771, 774-75 (S.D. Miss. 2000).

The Supreme Court has made it clear that factually bankrupt claims should not be permitted to proceed to discovery in the hopes of developing the factual basis that would save the claim.  In the case of _Bell Atlantic Corp. v. Twombly_, 127 S.Ct. 1955 (2007), a decision relied upon by this Court in its April 17, 2008 Opinion.  As the Court in _Twombly_ stated:

> [S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to take up the time of a number of other people, with the right to do so representing an _in terrorem_ increment of the settlement value.  So, when the allegations of a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of maximum expenditure of time and money by the parties and court.

_Bell Atlantic Corp. v. Twombly_, 127 S.Ct. 1955, 1966 (2007) (Citations and footnote omitted).

_Twombly_ specifically requires that the plaintiff provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  _Id_. at 1965.  Rather what is required is a "showing" of entitlement to relief rather than a "blanket assertion," in essence, a statement of circumstances, occurrences and events in support of the claim.  _Id_.  Moreover, _Twombly_ also rejected the notion that a claim which falls short of the necessary showing must be allowed to proceed to discovery in the hope of salvation.  In this regard, the court stated as follows:

> It is no answer to say that claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the process through "careful case management," given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side. . . .  Probably then, it

> is only by taking care to require allegations that reach the level
> suggesting conspiracy that we can hope to avoid to potentially
> enormous expense of discovery in cases with no "reasonably
> founded hope that the [discovery] process will reveal relevant
> evidence."

*Id.* at 1967 (Citations omitted). Accordingly, courts in this jurisdiction have not hesitated to

deny Rule 56(f) requests in light of *Twombly*. *See, e.g.*, *Lowe v. Drug Enforcement*

*Administration*, 2007 U.S. Dist. LEXIS (D.D.C. 2007)(Kollar-Kotelly, J.) (Motion to dismiss or

in the alternative for summary judgment granted and Rule 56(f) motion denied). As applied to

the instant case, this Court should reject ERC's request for a blatant fishing expedition where it

has not even a shred of evidence of wrongdoing by Woodner at any time after ERC's charter was

reinstated.

  As is alluded to above, ERC's motion also fails due to its failure to adequately explain

why the information it now seeks in discovery has not already been obtained. ERC has known

since December 2005 that its charter revocation doomed claims based on pre-reinstatement

activity, yet it developed no such evidence against Woodner before filing suit in January 2007.

Moreover, it  was readily apparent by the April 22, 2008 status conference that ERC's lack of

evidence of any post-April 25, 2005 discriminatory conduct by Woodner could doom its claims

in the instant case, because the Court expressly authorized Woodner to move for summary

judgment on the issue within 30 days. Yet ERC again failed to take action while Woodner's

Motion for Summary Judgment was pending and after undersigned counsel consented to a brief

extension of time to file its opposition. It was not until the instant motion was filed on July 11,

2008 that any efforts related to discovery were taken. ERC's description of the discovery it

seeks to conduct takes up less than a page of text, yet ERC would have this Court believe that a

law firm of over 1,700 attorneys could not get around to issuing discovery until now because it was preoccupied responding to two motions filed by Woodner. Under these facts, it cannot be found that ERC has adequately proved why the information it now seeks could not have previously been obtained.

In fact, discovery has been denied in cases with facts more compelling than the instant case. For example, in *Kibunja v. Alturas, LLC, 856 A.2d 1120 (D.C. 2004)*, a claim, originally filed in the Landlord and Tenant Branch, was certified to the Civil Division on October 17, 2001, and the defendant filed a motion for summary judgment on November 2, 2001. Plaintiffs filed their opposition on December 4, 2001, and asserted that discovery was needed concerning the calculation of an arrearage. In holding that the plaintiffs did not act expeditiously in seeking discovery, the Court of Appeals stated as follows:

> The record here shows that appellants had  adequate time for discovery to contest the amount they owed under the promissory note. The case was certified to the Civil Division on October 17, 2001, thus giving appellants the right, under L&T Rule 10(c), to initiate the discovery process. Even if we focus on the later date of November 2, 2001, when Alturas filed its motion for summary judgment, appellants filed their opposition on December 4, 2001, more than a month later. Assuming that discovery was even necessary for the sort of information sought by appellants, either time frame (*i.e.*, from October 17 or from November 2) gave them ample opportunity to seek the relatively uncomplicated information which they now claim they needed[.]

*856 A.2d at 1124-35* (footnote omitted). Accordingly, although *Alturas* addresses a party's failure to initiate discovery in a timely manner, the quote above questions why discovery was even needed by the opposing party to challenge the Motion for Summary Judgment. Here, ERC had ample opportunity after it was reinstated to ascertain if Woodner was engaging in discrimination and also had ample time after the April 22, 2008 status conference when it was

again made clear that such evidence was crucial to its claims.  It is "beyond the pale" that it asks the Court for even more time to find a basis for its claims.

ERC'S MOTION SHOULD ALSO BE DENIED FOR ITS
FAILURE TO COMPLY WITH LOCAL RULE 7(m)

Pursuant to LCvR 7(m), before filing any nondispositive motion in a civil action, counsel is to discuss the motion with opposing counsel to determine whether there is any opposition to the relief sought and to narrow the areas of disagreement.  The filing party is to include in its motion a statement that the required discussion occurred and a statement as to whether the motion is opposed.  This is a procedure ERC is familiar with, having followed it in connection with the Consent Motion for Extension it filed on June 22, 2008.  Yet, counsel for ERC failed to have the required discussion with the undersigned and failed to include the required statement in its motion.  This alone mandates a denial of ERC's motion.

CONCLUSION

It is clear that ERC does not have and never has had any evidence supporting its general claim that Woodner has engaged in a pattern of discrimination at any time on or after April 25, 2008.  ERC's request to delay disposition of Woodner's summary judgment motion so that ERC may conduct discovery to see if there may be any basis for its claims is nothing more than a bald fishing expedition of the type condemned by the United States Supreme Court.  Moreover, ERC failed to comply with the procedural requirements of LCvR 7(m).  Woodner therefore requests that this Court exercise its discretion and deny ERC's motion for specific discovery.

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 23, 2008

/S/

Richard W. Luchs, #243931
Roger D. Luchs, #347609
William C. Casano, #352492
1620 L Street, N.W., Suite 900
Washington, DC  20036-5605
Telephone:  (202) 452-1400
Facsimile:  (202) 452-1410
rwl@gdllaw.com
rdl@gdllaw.com
wcc@gdllaw.com

*Counsel for Defendant The Jonathan Woodner Company*

# EXHIBIT C

1     IN THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF COLUMBIA
2

3  SARAH BOURBEAU, et al,   . Docket No. CA-07-0164 (PLF)
             .
4    Plaintiff,     .
             . Washington, D.C.
5      v.      . April 22, 2008
             . 9:00 a.m.
6  JONATHAN WOODNER COMPANY,  .
             .
7    Defendant.    .
  . . . . . . . . . . . . . . . .
8
         TRANSCRIPT OF HEARING
9     BEFORE THE HONORABLE PAUL L. FRIEDMAN
      UNITED STATES DISTRICT JUDGE
10
  APPEARANCES:
11  For the Plaintiff:    Washington Lawyers' Committee
             For Civil Rights and Urban Affairs
12           By: Robert M. Bruskin, Esquire
           11 Dupont Circle, Northwest
13           Washington, D.C. 20036
           202.319.1000
14
           Kirkpatrick & Lokhart, Preston,
15           Gates, Ellis, LLP
           By: Jenee Desmond-Harris, Esquire
16           Thomas A. Reed, Esquire
           1601 K Street, Northwest
17           Washington, D.C. 20006
           202.661.3753
18  For the Defendant:    Greenstein, DeLorme & Luchs, P.C.
           By: William C. Casano, Esquire
19             Roger D. Luchs, Esquire
           1620 L Street, Northwest
20           Washington, D.C. 20036
           202.452.1400
21

22  Court Reporter:     Linda L. Russo, RPR
           Official Court Reporter
23           Room 6403, U.S. Courthouse
           Washington, D.C. 20001
24           202.354.3244

25  Proceedings reported by machine shorthand, transcript produced
  by computer-aided transcription

<u>P R O C E E D I N G S</u>

1

2    THE CLERK:  Civil action 07-0164, Sarah Bourbeau, et

3  al, versus Jonathan Woodner Company.  For the plaintiff,

4  Mr. Bruskin, Mr. Reed and Ms. Harris.  For the defendant, Mr.

5  Luchs and Mr. Casano.

6    THE COURT:  Good morning, everybody.  Well, how do

7  you want to proceed with what's left of the case?

8    MR. REED:  Thomas Reed for the plaintiffs, Your

9  Honor.  We view this morning, I take it, just to get some

10  scheduling direction from the Court.  We're anticipating an

11  answer from defendants, and we certainly are willing to work

12  with the defendant to come up with a discovery schedule that's

13  amenable to the Court and present that joint schedule to the

14  Court.

15    THE COURT:  Any way to resolve this case before we

16  start going down this road?

17    MR. REED:  We are certainly open.  We've had

18  discussions with defendant prior to filing the complaint.  We

19  had a number of discussions.  They didn't bear fruit, and then

20  we filed our complaint.  We haven't proceeded since then.  We

21  are certainly open to reopening discussions with the defendant,

22  but we have not had a conversation with them up to this time.

23    MR. LUCHS:  Good morning, Your Honor.  I'm Roger

24  Luchs.  A couple of things we'd like to address.  Part of the

25  problem with trying to settle a case like this, our client has

3

1  always taken Section Eight, and they have never denied people

2  because they had Section Eight.  We put that into the pleading.

3  It wasn't pertinent to the motion to dismiss, so that's going

4  to be a difficulty right there.  So we don't really have facts

5  upon which we could even start a negotiation.

6         And as you've seen from the Superior Court cases, I

7  don't know if you've seen the jackets.

8         THE COURT:  No, I've seen the opinions from Judge --

9         MR. LUCHS:  But normally even in the most minor of

10  cases of discrimination, or alleged discrimination, the

11  starting point for the ERC has been very, very high, and we

12  have viewed it really kind of as a, shall we say a fund-raising

13  mechanism, and approached it in that way in discovery.

14         With that said, there are a couple of things we would

15  like to raise with the Court now, and the Court may or may not

16  wish to address them.  One is, we are planning to file a motion

17  to certify the issue of the Human Rights Act issue and the Home

18  Rule Act issue to the Court of Appeals.

19         THE COURT:  The D.C. Court of Appeals across the

20  street?

21         MR. LUCHS:  The U.S. Court of Appeals.

22         THE COURT:  I don't think they're going to be

23  particularly interested, so I doubt that I'll do that.

24         MR. LUCHS:  Well, our client has advised us it's

25  something they'd like to do.

1    THE COURT:  This is a question of local law.  I don't
2    think the D.C. Circuit is going to get all that interested in
3    it.

4    MR. LUCHS:  But the Home Rule Act is a Congressional
5    act, it's not local.

6    And, secondly, with respect to ERC itself, your order
7    says that they could proceed with any cause arising after April
8    25th.  And going back and looking at the complaint, you'll see
9    that the last alleged task was in 2005.  They have not posited
10   anything in their complaint which was filed in 2007 to suggest
11   there was a continuing course of discrimination.

12   And what we found in the Superior Court cases when
13   this exact same situation came up before Judge Ross as to where
14   the corporate charter issue had come up and the claims were
15   dismissed, he inquired of the ERC counsel, counsel that handled
16   the matter for him, what evidence do you have of anything
17   happening after the charter was reinstated, and the answer was,
18   we don't have any but we need discovery to find it out.

19   And I bring that up because, as you know, the Twombly
20   decision, which was decided several months after these
21   pleadings were filed, has made it quite clear and even
22   addressed that very point, you cannot come into court and say
23   we need discovery.  And I would suggest to the Court that ERC
24   does not have any evidence of anything happening after April
25   25th.

1    And the reason they put that type of allegation in

2 the complaint as they did in Superior Court is in an effort to

3 keep the suits alive given the problems with the corporate

4 charter issue, but when pushed they have not come up with

5 evidence of continuing violations except in a particular case

6 where our client, that being the E and G case, had acknowledged

7 from day one that they had stopped taking Section Eight because

8 they weren't getting paid by the District of Columbia.

9    So we would ask perhaps for a proffer, if they have

10 any such proof, as opposed to saying, well we need discovery in

11 order to find out if there's a continuing conduct.  And, again,

12 the last alleged act of discrimination they even referred to

13 occurred two years before they filed the complaint.

14    THE COURT:  I suppose the other way you could do it

15 is, you could file a motion for summary judgment saying what

16 you have just said and incorporating by reference the arguments

17 that -- saying you've already ruled on the legal issue, and so

18 we're entitled to judgment because there's nothing after April

19 25th.  And then under Rule 56 they would be required to come

20 forward with affidavits or to ask for discovery under 56(f),

21 then I could either grant or deny the request for discovery.

22 And if they didn't have any affidavits, they'd be out of luck.

23    MR. LUCHS:  That's a method.  The concern, of course,

24 is that in all those cases when discovery was permitted, it

25 went on and on.

1          THE COURT:  But 56(f) discovery could be limited to

2    just that issue, or we could just agree on that now that they

3    would get limited discovery to try to show that anything

4    happened after April 25th.

5          MR. LUCHS:   Excuse me for one moment.

6          (There was a pause in the proceedings.)

7          MR. LUCHS:  Mr. Casano is saying that Rule 26(f),

8    they have to demonstrate some basis that would allow them to

9    even go with discovery.  And I think Twombly says the same

10   thing.

11         THE COURT:  It has to be plausible.

12         MR. LUCHS:  Again, if they've got some information,

13   even plausible information, if it's hearsay or something, it

14   should be easy enough to say they have that, and that should be

15   sufficient.

16         Thank you, Your Honor.

17         THE COURT:  Would you like to respond to that?

18         MR. REED:  Sure, Your Honor.  There are two aspects

19   to this case.  Obviously, there's the Sarah Bourbeau's case as

20   well, which is not dependent on these issues and should go

21   forward.

22         THE COURT:  Are you representing both plaintiffs?

23         MR. REED:  We are representing both plaintiffs.  With

24   respect to defendant's suggestion regarding a proffer, I

25   believe I agree with Your Honor's suggestions.  I think to the

1   extent that if they want to file a motion for summary judgment

2   and follow that procedure, we're prepared to respond.  We also

3   believe that we can prove continuing violations, and request

4   the opportunity --

5            THE COURT:  Are you using continuing violations in

6   the technical sense that some of the discrimination cases are

7   using it, or are you using it to mean that there were discrete

8   acts that took place after April 25, 2005?

9            MR. REED:  Well, discrete acts, including in that

10   context the issue being one of liability and not of damages.

11            THE COURT:  Being what?

12            MR. REED:  The issue being --

13            THE COURT:  What's the event?  What happened after

14   April 25, 2005?

15            MR. REED:  That I think would have to be borne out in

16   discovery.  There would be discrete acts in terms of turning

17   individuals away and discriminating against them based on

18   source of income.

19            THE COURT:  So you don't have any evidence at the

20   moment?

21            MR. REED:  We have -- hold on.  Let me confer with my

22   colleague.

23            (There was a pause in the proceedings.)

24            MR. REED:  Your Honor, after conferring with my

25   colleague, we do have evidence of multiple tasks occurring

1    prior to April 25th.  Now, to the extent that they can't be
2    used for damages purpose, we understand that, we understand
3    Your Honor's ruling with respect to that.
4         However, they do show pattern and practice prior to
5    April 25th, and we believe we're entitled to an inference that
6    that conduct has continued beyond that with respect to the
7    liability issue.  And discovery will bear that out past that
8    point.
9         THE COURT:  Why should they be put to discovery if
10   you don't have any discrete acts that occurred after April
11   25th?  Do you have any discrete acts relating to negligence
12   supervision after April 25th?
13        MR. REED:  That we don't have.  We believe what we do
14   have is a pattern and practice, and we would need discovery to
15   bear that out, Your Honor.
16        THE COURT:  Well, you all can sit down and try to
17   reach a schedule on discovery, but I'm not sure you'll be able
18   to.  And the defendants can move for summary judgment any time
19   they want to.
20        MR. REED:  Thank you, Your Honor.
21        THE COURT:  So defendants can move for summary
22   judgment any time they want to.  And I assume it's going to be
23   just against ERC.
24        MR. LUCHS:  That's correct, Your Honor.
25        THE COURT:  So defendants can move for summary

1   judgment against ERC any time they want to.  ERC will have to

2   respond within 30 days if that's what the rules say, which I

3   think it is, or file a 56(f) motion within 30 days.  And you

4   should sit down and try to work out a discovery schedule in

5   general.  I expect that you'll be able to agree on a discovery

6   schedule with respect to Ms. Bourbeau.  I'm not sure you'll be

7   able to agree on a discovery schedule with respect to ERC if

8   the defendant chooses to file a summary judgment motion.

9          On the other hand, it doesn't make a whole lot of

10  sense to have these on two totally separate tracks, so maybe

11  you could at least agree on document production and

12  Interrogatories with respect to both plaintiffs and the

13  defendant, even if you can't agree on depositions with respect

14  to ERC until after the Rule 56 motion is dealt with.

15         You also ought to talk about whether or not you want

16  to go to a mediator or Magistrate Judge to see if this can be

17  resolved in some fashion.

18         I don't know what else to suggest.  I suppose the

19  other thing that plaintiffs could do is if they had additional

20  evidence at their fingertips or a slightly different theory

21  after my opinion they could move to amend their complaint, the

22  defendant might oppose it, but they could, to avoid the problem

23  we've been talking about.

24         And then of course defendant says they're going to

25  move for certification to the Court of Appeals.  And we'll see

1   whether they do and what the plaintiffs' response is.

2          Some of these things should go on simultaneously, and

3   maybe others shouldn't go on simultaneously.  I don't know

4   whether you're going to be able to agree on that, but since

5   you're not in agreement today about how to proceed, and you're

6   not in agreement, which I was hoping you would be, to go

7   directly to a mediator or Magistrate Judge to discuss

8   settlement before we go down the discovery road, I suppose the

9   next best thing is to ask you to go sit down and try to talk to

10  each other and see if you can come up with a schedule, and file

11  in effect a Rule 16.3 joint report setting out those things as

12  to which you agree and those things as to which you disagree.

13         If defendant is firm in wanting to file a

14  certification motion and/or a Rule 56 motion, maybe you can

15  agree on dates for the briefing of those, even if you don't

16  like the fact that they're going to do it, and build in

17  plaintiff's right either to oppose the 56 motion or to file a

18  56(f) request for discovery.  And under 56(f), of course, the

19  request for discovery should be focused on that which you need

20  to oppose the summary judgment motion as opposed to broad

21  open-ended discovery.

22         You could consider, because it costs both sides I

23  assume money to litigate, you could consider postponing broader

24  discovery until after I rule on the 56 motion, if there's going

25  to be one, until after I rule on the motion to certify, if

1    there's going to be one.  You could consider limiting

2    yourselves to paper discovery for now, or, and I don't know

3    enough about the facts to know, if the discovery Ms. Bourbeau

4    needs is much more limited than the discovery ERC needs, you

5    could go forward with depositions on Ms. Bourbeau's behalf.

6    But I suspect that she probably needs to depose the same people

7    from Woodner that ERC would want to depose, too.

8             And so the question that you have to talk about when

9    you talk about discovery is how defendant feels about bringing

10   people in twice.  So, for example, if there were to be

11   depositions with respect to Bourbeau, we would at least be

12   limited to a discrete event and discrete days or weeks.

13            If, on the other hand, ERC is still in the case, it

14   wouldn't be so limited, although arguably it would be limited

15   to events after April 25, 2005, except that counsel for

16   plaintiff says we need to go back before then in order to show

17   a pattern and practice.  So I don't know whether you're going

18   to be able to agree on how to structure discovery.

19            MR. LUCHS:    Mr. Reed and I have had very pleasant

20   conversations.  We haven't agreed with anything, but we get

21   along fine, so it shouldn't be an issue.

22            THE COURT:  Well, let me put it this way.  It seems

23   like there are enough layers to this that you're better

24   positioned to try to reach agreements and/or to clearly

25   identify your points of disagreements and how you propose I

1    deal with it than I am to sit here and try to sort it out

2    without having more input from you after you've talked to each

3    other.

4           That having been said, and I do think that if there's

5    any realistic possibility of settling the matter, I don't know

6    whether there's any prospect of settling the matter with Ms.

7    Bourbeau and litigating what's left of ERC's case separately,

8    but that's also something else that one could consider.

9    Counsel for plaintiff obviously has two different clients, and

10   they have to look out for the respective interests of each.

11          But why don't we just agree on a date certain when

12   you're going to file something jointly under Rule 16.3, and

13   after I see where you are in agreement and where you are in

14   disagreement, I will issue a scheduling order.

15          So how much time did you think you need to talk to

16   each other and try your best to sort the case out procedurally?

17          MR. REED:  We recommend 30 days.

18          MR. LUCHS:  That's fine.

19          THE COURT:  So today is the 22nd, so why don't we say

20   by Friday, May 23rd, you'll file something.  If you sit down

21   and get to the end of the discussions and have your agreements

22   and your highlighted disagreements earlier, you can file

23   something earlier and then I can put a schedule in place

24   earlier.

25          And from defendant's point of view, I suppose that

```
 1    they still could file their certification motion or their
 2    summary judgment motion at any time.  But if they choose to do
 3    that before the expiration of the 30 days, I think you should
 4    still talk about and include -- let's not have gamesmanship
 5    where you run off and file it tomorrow so they have to file it
 6    before you even sit down and have your meeting.  I don't expect
 7    that, but if you want to file, if you have it clear in your
 8    minds, you can file.  But then when you sit down, you can build
 9    in whatever time plaintiffs think they need.
10         MR. LUCHS:  Even in Superior Court we never had a
11    problem with agreeing to dates.
12         THE COURT:  All right.  Well, good luck.  Thank you.
13      (Proceedings concluded.)
14
15                        CERTIFICATE
16         I, LINDA L. RUSSO, Official Court Reporter, certify
17    that the foregoing pages are a correct transcript from the
18    record of proceedings in the above-entitled matter.
19
20
21                        _____
                          Linda L. Russo, RPR
22                        Virginia CCR No: 0313102
23
24
25
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARAH BOURBEAU, *et al.*,

      *Plaintiffs*,

v.

THE JONATHAN WOODNER CO.,

      *Defendant*.

Case No. 1:07CV00164 (PLF)
Judge: Paul L. Friedman

## <u>ORDER</u>

      Upon consideration of Plaintiff Equal Rights Center's Rule 56(f) Motion For Specific

Discovery, Defendant's opposition thereto and the entire record herein, it is this _____ day of

_____, 2008, hereby

      ORDERED that Plaintiff Equal Rights Center's motion will be and hereby is DENIED.


_____
Paul L. Friedman
United States District Judge

Copies to:

Thomas A. Reed, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis LLP
1601 K Street, N.W.
Washington, DC  20006

Robert M. Bruskin, Esq.
Isabelle M. Thabault, Esq.
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, DC  20036

Richard W. Luchs
William C. Casano, Esq.
Roger D. Luchs, Esq.
Greenstein DeLorme & Luchs, P.C.
1620 L Street NW, Suite 900
Washington, DC  20036-5606