UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARAH BOURBEAU, et al.<br><br>Plaintiffs,<br><br>v.<br><br>THE JONATHAN WOODNER CO.,<br><br>Defendant. | Case No. 1:07CV00164 (PLF)<br>Judge: Paul L. Friedman |

**DEFENDANT'S REPLY TO PLAINTIFF EQUAL RIGHTS
CENTER'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Not surprisingly, Plaintiff Equal Rights Center ("ERC"), in its Opposition to the Jonathan Woodner Co.'s Motion for Summary Judgment ("Opposition"), attempts to recharacterize Woodner's Motion for Summary Judgment ("Woodner's Motion") as a motion for reconsideration. It argues that the Court has already ruled that ERC may pursue its claim that Woodner discriminated against Section 8 voucher holders after ERC's corporate charter was reinstated, on April 25, 2005, and that Woodner's Motion is, in reality, a request that the court reconsider that ruling. Based on this reasoning, it then contends that Woodner has failed to meet its "burden" to disprove ERC's allegation that as of January 23, 2007, when it filed suit, Woodner was continuing to engage in Section 8 voucher discrimination, and that it had engaged in such discrimination since April 8, 2005, the date of Woodner's alleged discrimination against Bourbeau.

ERC, at the April 22 status conference in this case, acknowledged that it has no evidence or facts to support the charge contained both in its Complaint and even in its Opposition, that Woodner "maintains a policy and practice of refusing to accept housing

4278\4\342596

choice vouchers. . ..." Opposition, p. 3. It nevertheless argues that, because it and Bourbeau have alleged that Woodner refused to accept Section 8 voucher holders as tenants over a period of years prior to the reinstatement of its (ERC's) charter by the District of Columbia, the Court may infer that Woodner engaged in, and continues to engage in a "pattern and practice" of discriminating against Section 8 voucher holders. In effect, ERC argues that, for the purpose of Woodner's Motion, the Court must accept ERC's allegations of pre-reinstatement Section 8 discrimination as true, and Woodner must thus "prove" that it did not engage in such discrimination after ERC's articles were reinstated. ERC even goes so far as to argue that the Court's statement in its April 17, 2008 Opinion, that it was not ruling on whether ERC had stated a valid claim of discrimination for the period after its articles were reinstated, is the law of the case on its right to proceed and thus may not be challenged through Woodner's Motion.

ERC has quite obviously and quite knowingly mischaracterized that portion of the April 17 Opinion. It appears ERC has concluded that this is its only hope to defeat Woodner's Motion because, even in its Opposition and its Statement of Material Facts filed therein with, ERC presents nothing, by way of affidavit or otherwise, to show that it now has, or ever had, a good faith factual basis for alleging ongoing discrimination by Woodner. Under Fed. R. Civ. 56 (e), it is ERC's burden to show it has a factual basis for making that claim, not Woodner's burden to show that it has not engaged in the discrimination alleged. And most prominently, ERC overlooks the fact that at the April 22, 2008 status conference, the Court invited Woodner to move for summary judgment, because of ERC's counsel's admission that ERC has no facts to support its "ongoing discrimination" charge. See transcript of April 22, 2008 hearing, attached to ERC's

Opposition, p. 7-8.  This, of course, constituted an admission binding on ERC and dispensed with any requirement that Woodner produce evidence to confirm the truth of the fact admitted or that it was not engaged in a "pattern or practice" of Section 8 voucher discrimination.  <u>Kreuzer v. George Washington University</u>, 896 A.2d 238 (D.C. 2006); citing <u>Hill v. Federal Trade Commission</u>, 124 F.2d 104 (5th Cir. 1941).

ERC also fails to offer any explanation for why, given that the last date on which it alleges a specific act of discrimination occurred, i.e. April 8, 2005, it did not thereafter conduct additional tests, or adduce any evidence of any kind from any source, to ascertain if Woodner's alleged discrimination continued thereafter.  Alternatively, if it did conduct such tests or sought such evidence, it clearly did not find any evidence of continuing discrimination because, if it had, it would surely have presented that evidence with its Opposition.

As to the inference ERC asks the Court to draw from the tests conducted in January, 2002 and April, 2005, and Bourbeau's alleged experience in April, 2005, ERC undertakes to "sweep under the rug" the legal import of the forfeiture provision in the District's Nonprofit Corporations law, and rulings by this and other courts, on the legal effect of the forfeiture of its articles in September, 2002.  Although ERC contends this Court may infer ongoing discrimination from its tests in combination with Ms. Bourbeau's alleged experience, the aforesaid decisions refute ERC's arguments in support of that contention.

In a line of cases, courts in the District of Columbia and in states which have forfeiture provisions similar to the District's have ruled that a corporation's existence ends once its articles are revoked.  See <u>Accurate Construction Co. v. Washington</u>, 378

A.2d 681 (D.C. 1977), Djourabchi v. Self, 240 F.R.D. 5 (D.D.C. 2006), interpreting Maryland law, Hill Construction Co. v. Sunrise Beach LLC, 2008 Md. App. Lexis 82 (July 2, 2008), Arnold v. Streck, 108 F.2d 387 (7th Cir. 1939), interpreting Missouri law, Arnold v. H. Piper Co., 48 N.E.2d 580 (App. Ill. 1943).  These cases uniformly hold that when a corporation ceases to exist, it is thus powerless to act.  As the U.S. Court of Appeals for the District of Columbia put it years ago, the death of a corporation is tantamount to the death of a natural person.  Fleming v. Charles L. Harney Const. Co., 85 U.S. App. D.C. 219, 177 F.2d 65, 71, citing; Oklahoma Gas Co. v. Oklahoma, 273 U.S. 257, 259 (1927).  Once a corporation's existence ends, the directors of that corporation are charged, under the common law or pursuant to statutory provisions codifying the common law, with winding up the former corporation's affairs, paying its debts and then distributing any remaining assets.  Pjourabchi v. Self, *supra*.  ERC has acknowledged all along that its operations continued as usual after revokation, and that it never undertook to wind up its affairs.

In EAW Group, Inc. v. The Republic of the Gambia, 2006 U.S. Dist. Lexis 84117 (D.D.C. 2006), reconsideration denied, 2007 U.S. Dist. Lexis 31809 (May 1, 2007). Judge Kessler applied the aforesaid principles in the case before her, relying upon the Accurate Construction Co. decision.  She wrote:

> . . . revocation involves stripping of a corporation of its powers.  After revocation by proclamation, a corporation organized under District of Columbia law is wholly without power to act or contract and its attempted acts and contracts are entirely void.  (*emphasis added*)

Id. at p. 18-19.  Later in that decision she commented further that reinstatement "does not . . . retroactively validate voided corporation action."  Id. at p. 20, footnote 9.  In effect, this means, as applied here, the tests conducted by ERC's personnel after its articles were

revoked were void when they were performed, and were not validated by its later reinstatement. Just as a deceased individual, by definition, could not have conducted such tests, neither could ERC. In fact, under District of Columbia law, the tests conducted under the auspices of ERC along with its continued operation subjected those in charge of ERC's ongoing operations to criminal penalties. D.C. Code § 29-301.87 (2001 ed.).

Were this not the case, a reinstated corporation, like ERC here, could take advantage of actions undertaken under its auspices when it did not exist – and for which, as noted, criminal sanctions are even provided – to pursue a cause of action based on actions engaged in after its articles were revoked. This reading of the law would effectively eviscerate one of the key penalties imposed by legislatures to penalize corporations that fail to maintain themselves in good standing. Indeed, in <u>Accurate Construction</u>, the Court left no room for doubt on that very point when it wrote:

> The purpose of revocation is obviously to prohibit a corporation from enjoying the privileges of that status when it has failed to perform its resultant responsibilities. Revocation is a disability imposed on a corporation as a penalty. <u>It would deprive the statute of its force and encourage a corporation to default on paying its taxes and fees and filing annual reports if by subsequent compliance such a corporation could at its convenience completely erase the effects of the penalty</u>. (*emphasis added*).

<u>Id</u>. at 685. This Court, in its April 18 Opinion, concurred with this reading of the District's law. There, it wrote:

> . . . Section 29-301.90 does not permit a corporation to give legal effect to all conduct in which it engaged during revocation. In particular, "<u>a corporation may not take advantage of its revoked status, either to enjoy a benefit derived from acts taken during the period of revocation</u> or to avoid liability for corporate debts incurred during that period." <u>Equal Rights Center v. Phifer Realty Inc.</u>, Civil

> Action No. 05-7190, Order at 3 (*emphasis added*); see also
> Community Credit Union Svcs., Inc. v. American Federal
> Express Svcs. Corp., 534 A.2d 331, 335 (D.C. 1987).  Cf.
> Accurate Constr. Co. v. Washington, 378 A.2d 681, 684
> (D.C. 1977).  (*emphasis added*).

549 F.Supp. 2d 78, 85 (D.D.C. 2008).

Allowing ERC's tests in 2005, before its charter was reinstated, to be used to support its claim in this litigation of a continuing pattern and practice of discrimination, would allow it to "enjoy a benefit derived from acts taken during the period of revocation."  This is simply not permitted under District of Columbia law.  And quite clearly the two tests it conducted in early 2002, when it was still in good standing, along with Bourbeau's alleged experience in April, 2005, do not evidence a "pattern or practice" of anything, much less that any discrimination occurred after April, 2005.[1]

ERC's invitation to the Court, that it "infer" from Bourbeau's specific experience in combination with tests conducted when it did not exist that Woodner continued to discriminate against Section 8 voucher holders after April 8, 2005, must be soundly rejected.  Surmise and conjecture are not the stuff on which oppositions to motions for summary judgment may be based.  United States v. Potamkin Cadillac Corp., 689 F.2d 379 (2d. Cir. 1982).  To the contrary, the party opposing the motion is required by Rule 56(e) to present "specific facts that would enable a reasonable juror to find in its favor." Walker v. Pharmaceutical Research and Manufacturers of America, 439 F.Supp. 2d 103 (D.D.C. 2006).[2]

---

[1]  In the Superior Court actions, the defendants there provided case authority to support their argument that ERC's testing did not follow accepted testing procedures, and thus were not valid to begin with.  However, this issue was never reached.

[2]  Because Rule 56(e) requires "specific facts" to be pleaded, ERC's pending motion, filed under Rule 56(f), does not constitute a valid basis to challenge Woodner's Motion.  It has acknowledged it currently has no facts to support its charge of ongoing discrimination.

In its Opposition, ERC acknowledges that at the April 22 status hearing, its "counsel explained that ERC did not have evidence of specific and discrete occurrences wherein Woodner discriminated against housing choice voucher holders after April 25, 2005," i.e. that it had no "specific facts" to support its charge of an ongoing "pattern and practice" of discrimination, much less a single act of discrimination against Section 8 voucher holders.  Opposition, p. 7.  See, e.g. McReynolds v. Sodexho Marriott Services, Inc., 349 F.Supp. 2d 1, 7-8 (D.D.C. 2004) ("Thus, to succeed on a pattern-or-practice claim, plaintiffs must prove more than isolated acts of discrimination, rather they must establish that discrimination was the defendant's standard operating procedure.")  Nevertheless, it argues there that Woodner, in its Motion, must disprove ERC's charges because of the inference (ERC) invites the Court to make.  If ERC's argument were correct, that would turn Rule 56 on its head.  And, although ERC cites one case in support of its bizarre reasoning, i.e. Newsome v. Up-to-Date Laundry, Inc., 219 F.R.D. 356 (D. Md. 2004), that case is inapposite because there, the plaintiff produced statistical evidence to support its proposal for whom should be made members of a for certification class purposes so that the court could infer, at that stage of the litigation, whom the class should be composed of.  The language ERC relies upon from that case has no bearing whatsoever in the context of a summary judgment motion.

Conclusion

There can be no doubt that ERC has never had any factual basis for arguing that, from April 25, 2005 to this very day, Woodner has had a "pattern and practice" of discriminating against Section 8 voucher holders.  Its plea for discovery is nothing more than the proverbial camel trying to get its nose inside the tent.

In Richardson v. National Rifle Association, 871 F.Supp. 449 (D.D.C. 1994), in which the plaintiff charged the NRA with employment discrimination based on race, this Court held that because the plaintiff "pointed to no specific facts" to support his claim, relying instead on "unsupported allegations and speculations" the NRA's motion for summary judgment was well-taken.  Similarly, in Addison v. Allstate Insurance Co., 97 F.Supp. 2d 771 (S.D. Miss. 2000), the Court rejected the plaintiff's Rule 56(f) motion and granted the defendant's motion for summary judgment, holding that the plaintiff's vague assertions that discovery would produce needed facts were insufficient to defeat Allstate's motion and, to the contrary, indicated plaintiff's intention to conduct a "fishing expedition."  Woodner would suggest to the Court that that is precisely what ERC has in mind here.

For all the foregoing reasons, therefore, summary judgment should be entered against ERC at this time.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: August 7, 2008

Richard W. Luchs, #243931
Roger D. Luchs, #347609
William C. Casano, #352492
1620 L Street, N.W.
Suite 900
Washington, D.C.  20036
Telephone:  (202) 452-1400

Counsel for Defendant